INDEPENDENT PENNSYLVANIA OIL COMPANY, PROSECUTOR, v. MAYOR AND COMMON COUNCIL OF THE CITY OF GLOUCESTER ET AL., RESPONDENTS.

Submitted May 14, 1926—Decided September 30, 1926.

1. The question of the reasonableness of an ordinance is a question of fact, and the burden of proof is on those who attack it.

2. The court will not interfere unless it is clearly shown that the ordinance, either upon the face of its provisions or by reason of its operation in the circumstances under which it is to take effect, is unreasonable or oppressive.

3. If an ordinance may operate reasonably in some instances or circumstances and unreasonably in others, it is not wholly void, and should not be set aside *in toto*, but should be permitted to stand, to the end that it may be enforced except in particular cases where it may be made to appear that the circumstances render the operation of its provisions unreasonable or oppressive.

JANUARY TERM, 1926.        503

*102 N. J. L.*    Independent, &c., Co. v. Mayor, &c., Gloucester.

4. The ordinance questioned in this case, relating to the storage and sale of gasoline and similar inflammable and explosive liquids, held within the powers conferred by the "Home Rule" act (*Pamph. L.* 1917—at *p.* 354), and as affecting this case, regulatory and not prohibitory, and as applied to the conditions of the case, not unreasonable.

On *certiorari*.

Before Justices PARKER, BLACK and CAMPBELL.

For the prosecutor, *Walter S. Keown*.

For the respondents, *Charles W. Letzgus*.

The opinion of the court was delivered by

PARKER, J. This writ of *certiorari* brings up an ordinance of the city of Gloucester, adopted December 14th, 1923, and which the prosecutor maintains is invalid and should be set aside. The delay of two years and more in attacking it is not explained, although it does appear that there has been some Chancery litigation between the prosecutor and the city.

The ordinance in question seems to be based on the powers conferred by the "Home Rule act" (*Pamph. L.* 1917, *pp.* 319 *et seq.*), in article 14, section 1, paragraph (p) (at *p.* 354): "To regulate the use, storage, sale and disposal of inflammable or combustible materials, and to provide for the protection of life and property from fire, explosions and other dangers." It is claimed that in the ordinance the city has gone beyond the limits of the power conferred, and a consideration of this question requires the incorporation at this point of the title and first section of the ordinance, the remainder relating to enforcement by prosecution, penalty, &c.

"An ordinance regulating the storage of petroleum, naphtha, benzine, benzole, gasoline, coal oil or any products of petroleum or any inflammable or explosive oils.

"Be is ordained by the mayor and common council of Gloucester city, that:

"Section 1. It shall be unlawful for any person or persons, firm or corporation, to keep or have stored in any building

or other premises, or on any land within the city of Gloucester, any petroleum, naphtha, benzine, benzole, gasoline, coal oil or any products of petroleum or any inflammable or explosive oils, in any quantity at any one time, more than two barrels of refined petroleum, one barrel of crude petroleum, two barrels of benzine, benzole, gasoline, coal oil, naphtha, or any other inflammable or explosive oils, respectively, unless the same shall be stored in tanks under ground, but in no case shall benzine, benzole, naphtha, gasoline, coal oil or any other inflammable or explosive oils be stored in the cellar of any building or other premises or on any land within the space of one thousand feet of any dwelling house, storeroom, building, barn, shed or other like structure within the corporate limits of the city of Gloucester."

Before proceeding to the particulars of the case, it is proper to note the settled rule touching attack by *certiorari* on a municipal ordinance as an entirety. To the broad claim here made that it is not regulatory but prohibitory, and, therefore, beyond the power conferred by statute, we cannot agree. If it provided that no gasoline, &c., should at any time or under any circumstances be stored in the city limits, that would no doubt be prohibitory, but this ordinance is far from saying that. We consider it regulatory, though, of course, very strict in regulation, and that brings up the question, common in municipal cases, whether the regulation is so unreasonable as to invalidate the entire ordinance.

In the leading case of *Pennsylvania Railroad Co.* v. *Jersey City,* 47 *N. J. L.* 286, followed in a number of cases, including *Hamblet* v. *Asbury Park,* 61 *Id.* 502; *North Jersey Street Railway Co.* v. *Jersey City,* 75 *Id.* 349, and *Neumann* v. *Hoboken,* 82 *Id.* 275, the rule was settled that on *certiorari* to an ordinance generally, as unreasonable, the court will not set it aside unless it is unreasonable *in toto.* If it may operate reasonably in some instances or circumstances, and unreasonably in others, it is not wholly void, and should not be set aside *in toto,* but should be permitted to stand, to the end that it may be enforced except in particular cases where it may be made to appear that the circumstances render the

operation of its provisions unreasonable or oppressive. In the Neumann case the "combustibles" ordinance, as applied to a mattress factory in the congested section of Hoboken, was upheld.

The general principle just stated is implicit in the very numerous attacks on zoning ordinances that are constantly made in this court. In 1921, in the case of Cliffside Park Realty Co. *v.* Borough of Cliffside, there was a general attack by *certiorari* on a zoning ordinance as unreasonable. The *certiorari* was dismissed on this very ground, *i. e.,* that the ordinance was not shown unreasonable *in toto,* and this action was affirmed by the Court of Errors and Appeals. 96 *N. J. L.* 278. Since that time, the unreasonable character of such restrictive ordinances (and the present one is of that general class) has been presented almost uniformly in *mandamus* proceedings where the issuance of a building permit was involved; in other cases, by a *certiorari* to a conviction under the ordinance.

We turn, then, to this question: Is it made to appear that this ordinance is unreasonable *in toto?* We conclude that it is not. We see nothing unreasonable in the requirement that the storage of inflammable oils and naphthas shall be in tanks under ground, and if not, that feature alone renders the ordinance immune to general attack on *certiorari.* The provision establishing a one-thousand-feet limit between any storage tank and any dwelling house, storeroom, barn, &c., is much more drastic, and, in some cases, as, *e. g.,* a private gasoline tank buried on the premises of a householder for his personal use, might be held unreasonable and invalid. As in the general run of zoning cases, the regulation is to be tested by the circumstances. For example, this prosecutor wishes to install two tanks of twelve thousand gallons each. A tank of that capacity, if eight feet deep, would be sixteen feet in diameter. They are to be filled by gravity (from tank cars, we presume) from a railroad siding on the premises; they are only one hundred feet from the railroad's electric third rail, and there is to be an electric pump to draw from them. The third rail carries a six hundred and fifty volt

current.    These facts are stipulated.    It is also in evidence that gasoline vapor is highly explosive, and that the electric third rail emits a quantity of sparks capable of igniting such vapor.

Add to all this, that the plan is for a filling station of a wholesale character, to judge from the size of the tanks, and the direct railroad connection, that the tanks are vented and that the filling of automobile tanks means contact of gasoline and air in the neighborhood of free electricity, and we profess ourselves altogether unconvinced that even the thousand-foot restriction, as applied to the business of this prosecutor, is an unreasonable one.    The question is, perhaps, not strictly before us for the technical procedural reasons already outlined, but in the interest of abridging litigation we have deemed it well to express our view on the general merits of the matter.

The writ of *certiorari* will be dismissed, with costs.