IN THE MATTER OF JOSEPH J. MASIELLO, JR., APPLICANT FOR LIMITED SCHOOL ADMINISTRATOR'S CERTIFICATE.

JOSEPH J. MASIELLO, JR., PETITIONER-APPELLANT, v. THE STATE BOARD OF EXAMINERS, RESPONDENT-RESPONDENT.

Argued November 18, 1957—Decided January 20, 1958.

592

594

*Mr. Leo Yanoff* argued the cause for petitioner-appellant (*Mr. H. Kermit Green*, of counsel).

*Mr. Thomas P. Cook*, Deputy Attorney-General, argued the cause for respondent-respondent (*Mr. Grover C. Richman, Jr.*, Attorney-General, attorney).

The opinion of the court was delivered by

FRANCIS, J. In November 1955 appellant Joseph J. Masiello, Jr. applied to the State Board of Examiners for a school administrator's certificate. The application was denied on the ground that he did not have the necessary qualifications. Subsequent appeals to the Commissioner of Education and the State Board of Education resulted in affirmances of the denial. Review was then sought in the Appellate Division of the Superior Court but we certified under *R. R.* 1:10–1(*a*).

*N. J. S. A.* 18:2–4(*e*) authorizes the State Board of Education to:

"Make and enforce rules and regulations for the granting of appropriate certificates or licenses to teach or to administer, direct, or supervise, the teaching, instruction or educational guidance of pupils in public schools operated by boards of education, for each of which certificates a fee of not less than $5.00 shall be charged."

Rules and regulations adopted pursuant to this statute are administered by the State Board of Examiners, the

agency to which the task of issuing the certificates is assigned. *N. J. S. A.* 18:13–1.

Possession of the school administrator's certificate sought by Masiello is essential for the position of supervising principal or superintendent of schools. To obtain it, certain qualifications established by the State Board of Education must be satisfied. One of them is at the heart of this controversy. It provides that the applicant must have

"*Three years* of experience *as a vice principal, when so designated by a board of education and properly certificated as a principal,* spending more than half time in the fields of administration or supervision, * * *." (Emphasis supplied)

Masiello asserted compliance with this standard, but the Board of Examiners declared to the contrary, basing its decision on the undisputed facts.

In order to understand the positions of the parties, some reference to the circumstances is necessary.

Masiello was employed as a teacher in the public school system in Madison, New Jersey, on September 1, 1935. On March 25, 1942, the local board of education created three new offices designated Dean of Boys, Dean of Girls and Director of Guidance in the Madison High School, where he was then teaching. The organizational chart before us illustrates the nature and stature of these positions by paralleling them on a horizontal line immediately below the office of Principal. They were designed to relieve the principal of certain duties, some of them supervisory and administrative. The title "Dean" was selected instead of "Assistant Principal" because the board felt that it sounded more authoritative. Masiello was appointed Dean of Boys and was given an increase in salary. Thereafter, his teaching burden was lessened and he spent about four-sevenths of each school day in supervisory or administrative work. However, he was never specifically designated "vice principal."

On *April 20, 1944,* during his tenure as Dean of Boys, the Board of Examiners issued to him a letter of eligibility for a supervisor's certificate. The record indicates that

under the then current rules, such a certificate would qualify the holder to serve as "principal of any school." However, Masiello never paid the requisite $5 fee or obtained the certificate. He resigned from the high school on *September 11, 1946* to become field representative of the New Jersey Education Association.

On *April 7, 1948* he was advised by the State Board that he was eligible for a high school principal's certificate. Some correspondence followed, apparently in furtherance of an effort on his part to demonstrate that his previous work as Dean of Boys met the test for a supervising principal's certificate. The Board declined to accept that experience as sufficient for the purpose, but did issue to him a statement of eligibility as high school principal on September 20, 1948. His status then remained at rest until he requested the school administrator's certificate in November 1955.

Masiello maintains that his service as Dean of Boys should be considered the equivalent of the required experience as vice-principal. The State Board of Education counters by pointing to the organizational chart showing three of the high school officers, Dean of Boys, Dean of Girls and Director of Guidance, on the same level of authority, with no person designated as vice-principal. And it urges that designation as such is demanded by the rule in order to avoid any question as to occupancy of the status necessary to qualify for a school administrator's post. Moreover, says the Board, appellant was never "properly certificated" as a principal while functioning as Dean of Boys, and possession of the certificate cannot be brushed aside as a mere formality by one who has received a statement of eligibility to acquire it. Our attention is called also to the fact that under *Rule* 23, which was then controlling, the statement operated to extend the right to obtain the certificate on payment of the fee for a period of four years after issuance. And we note that the document sent to Masiello and dated April 20, 1944 says:

"This statement of eligibility is valid until April 20, 1948."

However, we have concluded that it is not necessary to pass upon these two issues because in our judgment another ground exists which is clearly dispositive of the case.

If we were to adopt the view that service as Dean of Boys was the same as that of vice-principal and that failure to procure the supervisor's certificate was a mere formal irregularity, Masiello would still come face to face with the mandate that an applicant must have *three years* of experience as vice-principal while "properly certificated as a principal" in order to qualify as administrator. As has been shown, the statement of eligibility for the supervisor's certificate was issued on April 20, 1944, and he resigned as Dean of Boys on September 11, 1946, 2 years, 4 months and 23 days later.

To meet this insurmountable barrier, reference is made to the fact that Masiello commenced to function as Dean of Boys on March 25, 1942, more than two years prior to his notification of eligibility as supervisor. And it is argued that a portion of the period prior to April 20, 1944 should be tacked to his service after that date to make up the required three years. The Board of Examiners held that the time element of the rule could not be satisfied in that manner.

Masiello charges that this holding illegally discriminates against him because in previous situations similar to his the rules have been liberally interpreted in order to accomplish the end he is seeking here. In support of his position he refers to seven cases of alleged relaxation or waiver.

In the field of administrative law generally the doctrine of *stare decisis* has not had the same forceful impact as it has had in the common law. *Davis, Administrative Law* (1951), *p.* 550. The attribute of flexibility which is a salutary incident of the administrative process, as well as the acute understanding that similarity of problem is not identity, have made for an unusually gradual development of a doctrine of customary administrative law. However, subject to the basic notion that experience is a teacher and not a jailer, *Shawmut Ass'n v. Securities and Exchange*

*Comm.*, 146 *F*. *2d* 791, 796–797 (1 *Cir.*, 1945), a realization has grown over the years that constancy of decision is desirable. So interpretative and adjudicative determinations have been acquiring more decided precedential force both within the agencies and in the courts. *Parker, Administrative Law* (1952), *pp.* 250–253; *Davis, supra, p.* 561. In the important area of public education during these days of urgent need of qualified teachers, the agency charged with administration of the school laws ought to be and undoubtedly is sensitive to the significance of precedent. We assume that an awareness exists of the desirability of equal treatment of like circumstanced applicants for the various qualifying certificates, and that change of, or departure from, previous rulings will not take place unless they are brought about by general policy considerations or unless the need therefor becomes manifest through experience. Consequently, when a serious, as opposed to a frivolous, allegation of discrimination is made, just disposition of the claim would seem to require some specific distinguishment of the case by an informed agent of one of the boards at some time during the operation of the "comprehensive system of internal appeals" spoken of in *Laba v. Board of Education of Newark*, 23 *N. J.* 364, 382 (1957). The records of the cases being in the agency, such treatment is an important, if not an essential, aid to ultimate judicial review.

■■ One who charges discrimination in the application of allegedly precedential decisions must bear the burden of establishing it, and on the record presented here, we cannot say that the onus has been sustained. The Commissioner of Education●in his written opinion on appeal from the Board of Examiners did not discuss and distinguish each earlier instance relied upon by Masiello. However, he recorded the fact that he had reviewed the cases and had found that they did not warrant a conclusion of discrimination. Abstracts of them agreed upon by counsel have been furnished to us. Our study does not persuade us that they demonstrate the establishment of a custom or practice of relaxing the rule requiring service of a specific period of

time after the granting of one certificate as a condition to qualification for another in a higher echelon of school administration. Nor are we satisfied that the few instances cited in support of the alleged practice of tacking periods of service are so identical or analogous to the present controversy as to warrant a determination adverse to that of the Commissioner.

Masiello asserts that in the course of these proceedings he did not have a full and fair hearing and therefore was denied due process. He points out that the Board of Examiners disposed of the matter on an informal basis; that on the first appeal, although full opportunity was given for the examination and cross-examination of witnesses and for the introduction of documentary proof, the Commissioner did not grant a *de novo* hearing and made no independent findings, but limited his review to a decision as to whether there had been illegal, unreasonable or arbitrary action by the Board of Examiners or whether its action showed bias or prejudice; and that in the final appeal the State Board of Education, without written opinion, simply affirmed the Commissioner's findings.

■ It has long been the law of this State that the requirements of due process are satisfied in situations of this kind if at any time before the order becomes effective, a fair hearing is granted by administrative or judicial action. *New Jersey Zinc Co. v. Board of Review,* 25 *N. J.* 235, 239 (1957); *Adams Theatre Co. v. Keenan,* 12 *N. J.* 267, 278 (1953); *Metropolitan Motors v. State,* 39 *N. J. Super.* 208 (*App. Div.* 1956). "Hearing" in this context means a hearing of evidence and argument, and judgment thereon. *Handlon v. Town of Belleville,* 4 *N. J.* 99 (1950); *New Jersey State Bd. of Optometrists v. Nemitz,* 21 *N. J. Super.* 18, 28 (*App. Div.* 1952).

■ Assuming that there was an infirmity in the type of proceeding before the Commissioner because of his failure to afford an independent review of the original agency action, it cannot be said that prejudicial error resulted. This is so because the facts are undisputed as to Masiello's lack of

three years of experience as a vice-principal while certificated as a principal, and therefore the dispositive issue to be resolved by the Commissioner was one of law and not of fact. *Cf. Nordco, Inc., v. State,* 43 *N. J. Super.* 277, 283–286 (*App. Div.* 1957).

However, in view of the statement by the Commissioner that the scope of review before him is restricted to consideration of the problem of arbitrary action or abuse of discretion by the Board of Examiners, it seems advisable to discuss the administrative hierarchy within the Department of Education and the nature of the internal appeals afforded by the relevant statutes. We do this with a consciousness that within the legislative grants of authority the various tribunals "may mould their own procedures so long as they operate fairly and conform with due process principles." *Laba v. Board of Education of Newark, supra,* 23 *N. J.* at *page* 382.

The State Department of Education is the highest echelon of the structure. It is composed of the State Board of Education and the Commissioner of Education. The Board consists of 12 members appointed by the Governor, and is invested with general supervision and control of public instruction in the State. *N. J. S. A.* 18:2–1. The Commissioner of Education is likewise appointed by the Governor. He is the chief executive and administrative officer of the department. Also, he is the secretary of the Board, as well as its official agent for all purposes. *N. J. S. A.* 18:3–1, 7 and 7.2. Subject to the approval of the Board, he is empowered to enforce all of its rules and regulations and to supervise all schools of the State receiving any part of the state appropriation. *N. J. S. A.* 18:3–7 and 7.2. He may appoint up to six assistant commissioners of education subject to the approval of the Board and civil service regulations where applicable, *N. J. S. A.* 18:3–2; 18:3–7.1, and he may assign to one of them the duty of "hearing and determination of controversies and disputes which may arise under the school laws, or the rules and regulations of the State Board * * *." *N. J. S. A.* 18:3–2(e).

Provision is then made for the establishment of a State Board of Examiners. The Commissioner of Education is its chairman, and subject to the approval of the State Board of Education he appoints its members. The Board of Examiners is the original level of the administrative framework and is authorized to "grant appropriate certificates to teach or to administer, direct, or supervise, the teaching, instruction or educational guidance of pupils in public schools operated by boards of education * * * under rules and regulations prescribed by the State Board of Education." *N. J. S. A.* 18:13-1. Thus, it is apparent that the authority of the Commissioner extends into each of the three planes of the Department's structure.

As has already been said, the demands of due process necessitate a fair hearing for an applicant like Masiello by administrative or judicial action. From the standpoint of practical and efficient operation of the various statutes denoting the legislative intent, where should such a hearing be given? At some level of the tripartite Department, or within the court system?

Previous to the 1947 Constitution, generally the final action of an administrative agency was reviewed in the courts by means of the prerogative writs. In most instances, after the writ, or rule to show cause why such a writ should not be granted, was allowed, testimony was taken through reference to a Supreme Court Commissioner. This testimony sometimes augmented an inadequate record of the agency; frequently it constituted the entire record submitted for consideration by the court. In many cases, therefore, the judicial determination was reached in part on the basis of matters not advanced below or not as fully developed below. This was not a wholly satisfactory or efficient method of review. In some sense it diluted or rendered less effective the expertise of the agency.

Under our present judicial system, appeal from a final administrative tribunal order is to the Appellate Division of the Superior Court. *R. R.* 4:88-8. Leave to take additional material testimony may be granted on such appeal

on a showing "that there were good reasons for failure to present it in the proceedings before the agency." The Division may order that it be taken before the agency or "in exceptional instances, before a judge in a trial division." And when the additional proof is introduced before the agency, it must be made part of the appeal record "together with * * * findings of fact thereon by the agency." *R. R.* 4:88–9. So the new rules of practice have at the least a two-fold purpose. One is to accord the fullest possible recognition and effect to the legislative intention in establishing the agency to administer the law governing the particular subject. The second is to enable the judicial branch of the government to have the benefit of the expert and experienced judgment of the administrator on the full facts before attempting to engage in a review of its action. Thus, a motivating factor in the adoption of *R. R.* 4:88–8 and 9 was the obvious desirability, as a matter of practical and convenient administration, of having a hearing in the agency in the first instance which would meet the demands of due process. In this way the functions of the agency and the court may be exercised under conditions which give the broadest possible sweep to the jurisdiction of each. We do not impose such a practice; we propose it in the interest of expedience, efficient operation within our respective jurisdictions, and last, but not least, as a sound approach to the achievement of ultimate justice. As Justice Jacobs said for this court in *New Jersey Zinc Co. v. Board of Review, supra,* 25 *N. J.* at *page* 240:

"* * * [d]ecent regard for the legislative policies and the interests of the parties directs that the underlying factual findings and the determination thereon be made first within the agency."

These observations bring us to the consideration of the present matter. The record indicates that the proceeding before the Board of Examiners was an informal one. A hearing in the constitutional sense was not accorded there. Although the Commissioner is chairman of the board, he

did not—and, we assume, usually does not—participate in its decision. The statute does not in express terms direct that appeal from such decision be taken to the Commissioner. However, *N. J. S. A.* 18:3–14 says that he

"shall decide without cost to the parties all controversies and disputes arising under the school laws, or under the rules and regulations of the state board or of the commissioner."

This enactment provides the basis for his review of the action of local boards of education. *Laba v. Board of Education of Newark; supra; Board of Education of Borough of Beach Haven v. State Bd. of Education,* 115 *N. J. L.* 364, 367 *(Sup. Ct.* 1935); *Schwarzrock v. Board of Education of Bayonne,* 90 *N. J. L.* 370 *(Sup. Ct.* 1917); *Ridgway v. Board of Education of Upper Freehold Tp.,* 88 *N. J. L.* 530 *(Sup. Ct.* 1916). And it is reasonable to suppose that the same avenue was meant to be followed in challenging an order of the Board of Examiners. *Clark v. State Board of Examiners,* 5 *N. J. Misc.* 175 *(Sup. Ct.* 1927).

Consideration of the appeal may be by the Commissioner personally or he may delegate the "hearing and determination" to an assistant commissioner, "subject to the right of appeal from any such determination to the State Board." *N. J. S. A.* 18:3–2(*e*). If the appeal is handled personally by the Commissioner, review of his decision may be had before the State Board of Education. *N. J. S. A.* 18:2–4(*d*).

Masiello's appeal was sent to an assistant commissioner where full opportunity to *produce* and *examine* witnesses was given. Apparently the delegation to the subordinate official was made merely for the purpose of enabling him to act in the capacity of a gatherer of evidence. See *Horsman Dolls, Inc., v. State Unemployment Compensation Comm.,* 134 *N. J. L.* 77, 80–81 *(E. & A.* 1946). Decisional authority was withheld. The record as compiled was returned to the Commissioner (we assume without a report or recommendation, *Mazza v. Cavicchia,* 15 *N. J.* 498 (1954)), who then rendered his decision.

As set forth above, the legislative scheme contemplates final administrative review by the Board of Education. That board may refer "the conduct and hearing of such appeals to a committee of not less than three in number of its members, which committee shall, after consideration, report thereon and recommend its conclusions to the board, which board shall thereupon decide the appeal by resolution in open meeting." *N. J. S. A.* 18:3–15. In this connection it should be noted that where such reference procedure is adopted, the report of the panel must be made available to the interested parties and they should be given an opportunity to file objections to it and to be heard thereon by the board itself before final determination is made. *Fifth Street Pier Corp. v. City of Hoboken,* 22 *N. J.* 326 (1956); *Redcay v. State Board of Education,* 128 *N. J. L.* 281 (*Sup. Ct.* 1942).

When the Commissioner regained the record after all of the evidence of the parties had been compiled, what was his function? He took the view that it was to study the proof in order to decide whether the action of the Board of Examiners was arbitrary or capricious or whether it was the result of bias or prejudice. We cannot agree.

The mandate of the Legislature is that the Commissioner "shall decide  *  *  *  all controversies and disputes." "Decide" in such a context means decision after hearing on the facts presented to him. Manifestly, there was no adequate hearing before the Board of Examiners. The evidence was gathered for the first time on appeal to the Commissioner so that he could "decide" independently as the statute ordained, as distinguished from his more restricted appraisal of the action taken at the initial level. The importance of his pursuit of a proper course of action can be gauged by the fact that on further appeal the Board of Education, without opinion, simply affirmed his ruling.

We do not undertake to say that the hearing shall be had before the Commissioner or at what level of operation it shall be provided. Solution of these problems is left to the discretion of the Department. The concern of the

judicial branch of the government is that a hearing be given and an adequate record made either before the Board of Examiners or before the Commissioner. If such a hearing takes place before the former and decision is rendered there after the parties have had a proper opportunity to be heard, then on appeal the latter "[i]n reaching his determination * * * must * * * give due weight to the nature of the findings below, although his primary responsibility is to make certain that the terms and policies of the School Laws are being faithfully effectuated." *Laba v. Board of Education of Newark, supra,* 23 *N. J.* at *page* 382. More definitively, this means that the burden of the Commissioner is to weigh the evidence and to make an independent finding of fact on the record presented; and in the process of reaching that finding, he should give due regard to the opportunity of the hearer below to observe the witnesses and to evaluate their credibility. *Cf. R. R.* 1:5–4(*b*). On the other hand, if, as in this case, the hearing demanded by principles of fair play is had before him for the first time, then the obligation to "decide" signifies a completely *de novo* and independent decision on the facts.

Our view as to the scope of the various departmental appeals has been propounded because, as was said in *Laba* (23 *N. J.* at *page* 381), the statutory language "leaves much to be desired" and because of the prevalent apparent misconception of the Commissioner's function on review. On the record before us, if the facts had been in conflict on the crucial aspect of the case, *i. e.,* compliance with the three-year service requirement for the administrator's certificate, a remand to the Commissioner would have been ordered for an independent resolution of the issue. But since the facts showing noncompliance with the time condition are undisputed, there is no need to do this. And because the stipulated records of the cases submitted in support of the claim of departure from precedent are not adequate to warrant a conclusion of discrimination, bias or prejudice against Masiello, we see no occasion for a remand on that score.

However, a word of caution seems advisable. In his opinion the Commissioner took the view that "It is not within the province of the Commissioner to order the State Board of Examiners to alter its interpretation of the rules" of the State Board of Education. Such self-imposed limitation does not appear to be proper upon a study of the broad statutory authority granted to him. As has already been indicated, he is required to enforce "all rules and regulations prescribed by the State Board" and to decide all disputes arising under the rules and regulations of the State Board. And as *Laba* notes, "his primary responsibility is to make certain that the terms and policies of the School Laws are being faithfully effectuated." Consequently if, on appeal to him, it appears on the exercise of his independent judgment that an interpretation by the Board of Examiners of any rule of the Board of Education is violative of the letter or spirit of such rule, the proper discharge of his duty requires corrective action.

For the reasons stated, the order of the Board of Examiners refusing to grant a school administrator's certificate is affirmed. No costs.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.