HARVARD ENTERPRISES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MADISON, COUNTY OF MIDDLESEX, DEFENDANT-RESPONDENT, TOWNSHIP OF MADISON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, INTERVENOR-RESPONDENT.

Argued October 20, 1969—Decided July 6, 1970.

*Mr. David R. Simon* argued the cause for appellant (*Mr. Simon and Mr. George L. Seltzer,* on the brief; *Messrs. Simon & Allen,* of counsel; *Mr. Herbert B. Bierman,* attorney).

*Mr. Karl R. Meyertons* argued the cause for respondent Board of Adjustment of the Township of Madison; *Mr. Marc J. Gordon* argued the cause for respondent Township of Madison (*Mr. Meyertons,* on the brief for respondents; *Mr. Gordon,* of counsel for respondents).

The opinion of the court was delivered by

SCHETTINO, J. Plaintiff filed a complaint in lieu of prerogative writ challenging (1) the constitutionality of Article XVI, paragraph 2E, of the Madison Township (Township) zoning ordinance, and (2) the denial by the Board of Adjustment (Board) of a special exception permit to construct a gas station. The Township intervened as a party defendant.

In an unreported opinion, the Law Division upheld the validity of both the ordinance and the Board's action. Plaintiff appealed and we certified the matter before argument in the Appellate Division. *R.* 2:12–2.

Plaintiff is a purchaser under an option to buy land situated in Madison Township on which it desires to build a gas station. The lot is 233 feet away from an existing gas station and it lies in a "C–3 Commercial Zone," in which retail stores, business and professional offices, restaurants, automobile salesrooms, and parking lots are permitted. Gas stations are also allowed in this zone by way of special exception.

The section of the ordinance here challenged provides in relevant part:

E. Gasoline filling stations, Public garages and auto repair shops may be permitted in a C-1, C-2, or C-3 Commercial Zone provided that the following standards and conditions are complied with:
*        *        *        *        *        *        *        *
2. The proposed use shall be located on a lot * * * the lot lines of which are located not less than * * * two thousand (2000) feet from an existing gasoline filling station, public garage or auto repair shop.
*        *        *        *        *        *        *        *
6. The proposed use shall in no way be detrimental to the health, safety and general welfare of the Township nor shall it result in a depression of any established property values in the general area.

In accordance with the above ordinance, plaintiff applied to the Board for a special exception permit and for relief from the terms of the ordinance. Hearings were held on March 18, 1968, and April 5, 1968. Plaintiff appeared before the Board and called three witnesses to testify.

The first witness, John Hall, testified that he was the manager of the real estate department of Phillips Petroleum Co. and supervised the selection of sites for future gas stations. He stated that plaintiff's lot was a good location in view of the number of homes and apartments in the area and the normal traffic flow. Based on these factors, he concluded that there was a need for the service station, that the traffic would not be increased, and that the area would be "generally enhanced."

Hall conceded that his study of the area was made in 1966 and that a considerable amount of construction had occurred since that time. There were now three homes within 200 feet of the station. He also acknowledged that the gas tanks would have to be filled more than once a week. Accordingly, a delivery truck carrying 8,000 gallons of gasoline would be parked at the station at sometime during a given week. Moreover, he stated that there was no fire hydrant in the area. In regard to the traffic flow, he indicated that a study he conducted revealed a total of 700 cars per day passing in front of the proposed station at peak hours.

The next to testify was Raymond Oothout, the construction engineer for Phillips Petroleum Co. who had prepared the plans for the station. He explained that the station would be an "up-to-date ranch-style gable-roofed building with brick veneer face which * * * [would] lend itself well with the newer structures in the area." Moreover, he testified that the storage tanks and the size and angle of ingress and egress conformed to presently accepted underwriting codes and petroleum industry standards. In regard to the ingress and egress, he stated that they were designed so that cars could turn into the station without coming to a

stop and therefore would not hinder the flow of traffic. He conceded, however, that the setback of the proposed sign did not conform to the zoning ordinance.

The final witness was Joseph Harrigan, a licensed New Jersey real estate broker. Mr. Harrigan specialized in commercial endeavors, particularly acquistions of land for gas stations. In his opinion, the highest and best use of the property would be for a gas station. He asserted that such a use was compatible with the general area and would not detrimentally affect the value of adjacent properties.

In addition to the above witnesses, plaintiff submitted a report prepared by a petroleum institute which summarizes independent studies conducted in various parts of the United States of the fire and traffic hazards involved and which attempts to refute other traditional justifications for restrictive zoning of gas stations. Similar studies are discussed in Mosher, *"Proximity Regulations,"* 17 *Syracuse L. Rev.* 1 (1965). In essence, these studies conclude that the traffic and fire hazards are no greater for gas stations than for other commercial uses. Surprisingly, the fire insurance rates for gas stations appear to be lower than for grocery stores and restaurants. Plaintiff's witnesses testified that the results of these studies coincided with their own experiences.

From the above testimony, the Board found the following facts: (1) The premises in question are 233 feet from an existing gas station; (2) There are three residential dwellings within 200 feet of said premises; (3) There is no fire hydrant in front of the premises nor in the immediate vicinity of the premises; (4) No sanitary sewer facility services the premises; (5) Gasoline would be stored in two underground tanks each holding 8,000 gallons of gasoline; and (6) The premises contain more than 20,000 square feet and are not within 1,000 feet of any school, hospital, church or library.

The Board then determined and found:
(a) Present Zoning Ordinance of the Township of Madison requires a distance of 2,000 feet from an existing gasoline filling station, pub-

lic garage or auto repair shop and proposed station does not meet that requirement.

(b) Proposed use [would] be detrimental to the health, safety and general welfare and would result in depreciation of established property values in the general area.

Accordingly, the Board denied plaintiff's application for a special exception permit.

Plaintiff thereafter commenced this action in the Law Division to set aside the Board's denial of his application. Plaintiff argued that the part of the Township ordinance requiring 2,000 feet distance separating the proposed gas station from the presently existing station was unconstitutional in that it arbitrarily and unreasonably restricted the gas station while permitting other commercial uses.

At trial in the Law Division, the record of the proceedings before the Board was admitted into evidence. No further testimony was offered by either side.

In rejecting plaintiff's contentions, the trial court stated that it considered itself bound by earlier decisions of this Court and the Appellate Division. Specifically, the trial court referred to *Schmidt v. Board of Adjustment of City of Newark,* 9 *N. J.* 405 (1952), and *Socony Mobil Oil Co. v. Township of Ocean,* 56 *N. J. Super.* 310 (Law Div. 1959), *aff'd.,* 59 *N. J. Super.* 4 (App. Div. 1960).

*Schmidt* held that for the purposes of classification and special regulation, gasoline service and filling stations would be considered *sui generis.* "They are an indispensable adjunct of our modern economy; but they involve risks to the safety of persons and of property and the general comfort and convenience which call for their regulation in the common interest." 9 *N. J.* at 422. The Schmidt rationale was subsequently applied in *Socony.* There, an ordinance prohibiting gas stations within 1,500 feet of each other was upheld against a challenge on equal protection grounds.

Regarding the above cases as dispositive, the trial court did not consider the second ground advanced by the Board for denying plaintiff's application, *i. e.,* "Proposed use

[would] be detrimental to the health, safety and general welfare and would result in depreciation of established property values in the general area." It reasoned that the Board's action could be sustained on the sole basis that the proposed station was less than 2,000 feet from an existing station.

On appeal, plaintiff's sole contention is that any proximity regulation of gas stations violates the equal protection clause when similar restrictions are not imposed on other commercial uses permitted in the same area. Plaintiff concedes that the *Schmidt* and *Socony* cases, if still valid, are dispositive of the present appeal. It argues, however, that these decisions should be reconsidered in light of the factual record before the Board and the "alleged changed circumstances" in the industry. While this Court has not hesitated in the past to reconsider policies in light of new evidence and changed circumstances (see, *e. g.*, *Collopy v. Newark Eye & Ear Infirmary*, 27 *N. J.* 29 (1958)), we believe that the present record does not warrant a departure from the prior decisions.

■ Preliminarily, it should be noted that the judicial role in reviewing a zoning ordinance is tightly circumscribed. There is a strong presumption in favor of its validity, and the court cannot invalidate it, or any provision thereof, unless this presumption is overcome by a clear showing that it is arbitrary or unreasonable. *Morris v. Postma*, 41 *N. J.* 354, 359 (1964); *Napierkowski v. Gloucester Tp.*, 29 *N. J.* 481, 492 (1959); *Zampieri v. River Vale Tp.*, 29 *N. J.* 599, 605–606 (1959); *Bogert v. Washington Tp.*, 25 *N. J.* 57, 62 (1957).

■ Furthermore, an ordinance that may operate reasonably in some circumstances and unreasonably in others is not void *in toto*, but is enforceable except where in the particular circumstances its operation would be unreasonable and oppressive. *Isola v. Borough of Belmar*, 34 *N. J. Super.* 544, 552 (App. Div. 1955); *Independent, etc., Oil Co. v. Mayor, etc., of Gloucester*, 102 *N. J. L.* 502, 504 (Sup. Ct. 1926); 5 *McQuillin, Municipal Corporations* (*3d ed.* 1969),

§ 18.05, *p.* 344. The determination of such an issue depends upon an evaluation of the proven facts within the context of applicable legal principles. The total factual setting must be evaluated in each case, and if the issue be in doubt, the ordinance must be upheld. *Vickers v. Township Committee of Gloucester Tp.,* 37 *N. J.* 232, 242 (1962); *Bogert v. Washington Tp., supra,* 25 *N. J.* at 62; *Yanow v. Seven Oaks Park, Inc.,* 11 *N. J.* 341, 353 (1953).

■ To sustain its position, plaintiff had to demonstrate that the problems traditionally associated with gas stations —fire, traffic, aesthetic considerations—are no greater than for other commercial uses permitted in the same area. The record before us, however, may be characterized as an abstraction. Little information has been provided regarding the local situation. We do not know anything of the traffic pattern, or whether the road is used for local or through traffic. The Township suggests that through travelers tend to maneuver for a relatively quick stop when they chance to come upon a gas station, and hence an interval between stations is rational on that account alone. Without such local information, we cannot say that the ordinance in question is unconstitutional as applied to this property. Nor can we on this record say that every proximity regulation is inherently invalid.

Accordingly, the judgment is affirmed without prejudice.

HALL, J. (concurring). I agree with the conclusion reached in the Court's opinion, which I read to say that the plaintiff's proofs are much too inadequate to permit proper consideration of the validity of the proximity requirement of 2000 feet between filling stations, either on its face as to Madison Township or everywhere, or with respect to this particular property. I would add some further views.

Plaintiff's course of action requires this result. It first sought combination relief before the Board of Adjustment which could not possibly have been granted by that body without a gross perversion of zoning principles and law. A

special exception under *N. J. S. A.* 40:55–39(b) could not be granted because at least the 2000 foot distance mandated by the ordinance stood in the way. So plaintiff also requested a variance from that requirement. Such would amount to a use variance under *N. J. S. A.* 40:55–39(d), which requires the existence of "special reasons" as well as meeting the negative criteria. The testimony offered could not possibly support a use variance. On this score it amounted to little more than opinion evidence that the property is a good site for a gas station and that such is its highest and best use. The only further evidence was a petroleum industry report designed to show the modern unreasonableness of filling station zoning restrictions, which at best would go to the general unconstitutionality of such regulations, a matter not within the province of a municipal administrative agency.

The single count complaint in the Law Division sought a review of the denial by the Board of Adjustment. The demand for relief related to this particular property and the special exception application, requesting that the action of the Board be set aside and that it be directed to grant the exception and issue a building permit. The only ground for relief alleged was that the 2000 foot requirement "is improper, illegal and constitutes an arbitrary and unreasonable classification of the business of gasoline service stations without similar restraint or regulation on similar businesses." This claim, as elaborated upon in plaintiff's brief, amounts to a general contention that any zoning regulation anywhere restricting the distance between filling stations is unreasonable in this day and age and invalid on its face. Plaintiff offered no proofs on the subject beyond introducing the largely irrelevant and completely unsatisfactory record before the Board of Adjustment.

I am convinced that it is time for judicial reconsideration of filling station zoning restrictions, including especially those dealing with a required distance between stations. They stem, as do decisions in this state generally upholding them, largely through repetition, from the early days of the

motor vehicle and gasoline retailing. In many jurisdictions a modern, more realistic approach, in the light of experience as to hazards, has been taken and special regulations have been struck down, at least in part. See cases collected in 2 Anderson, *American Law of Zoning,* secs. 11.23 to 11.35 (1968). But reconsideration should not be undertaken by a court in the absence of a full record of competent, relevant evidence, from appropriate zoning and other material standpoints, thoroughly exploring the matter. Such a record being so patently absent in this case, we should not get into the question at all. We granted certification under the mistaken belief that the record would permit reconsideration. So affirmance of the judgment (or vacation of the certification as improvidently granted) is called for, without prejudice to plaintiff's institution of a new suit in lieu of prerogative writ attacking the validity of the ordinance proximity requirement.

HALL, J., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.