**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1929-20

IRENE CONTI, JOHN KOIDL,
and ROBERT HILDEBRANDT,

      Plaintiffs-Appellants,

v.

CHADD SMITH, MALISSA
SMITH, and POINT PLEASANT
BOROUGH PLANNING BOARD,

      Defendants-Respondents.

_____

Argued February 3, 2022 – Decided February 15, 2022

Before Judges Haas and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0232-19.

Dennis M. Galvin argued the cause for appellants (Davison, Eastman, Munoz, Paone, PA, attorneys; Dennis M. Galvin and Christina N. desGroseilliers, of counsel and on the briefs).

Michael Elward argued the cause for respondents Chadd and Malissa Smith.

Ben A. Montenegro argued the cause for respondent Point Pleasant Borough Planning Board (Montenegro, Thompson, Montenegro & Genz, PC, attorneys; Ben A. Montenegro and Ryan M. Amberger, on the brief).

PER CURIAM

Plaintiffs Irene Conti, Joan Koidl, and Robert Hildebrandt appeal from the Law Division's November 7, 2019 and February 3, 2021 orders for final judgment dismissing their action in lieu of prerogative writs against defendants Chadd Smith and Malissa Smith (collectively the Smiths), and the Point Pleasant Borough Planning Board (the Board). We affirm.

Robert Hildebrandt's father, Bernard Hildebrandt, owned property at 821 Trenton Avenue in Point Pleasant Borough. Bernard[1] applied to the Board for minor subdivision approval and variance relief concerning his property. Bernard told the Board he wanted to divide the property into two lots. He then planned to convey the house where he currently lived to Robert and build a house for himself on the new lot at 821A Trenton Avenue.

The new lot was landlocked because it did not have access to Trenton Avenue. Accordingly, when the Board approved Bernard's application, it

---

[1] Because the Hildebrandts share the same surname, we refer to them individually by their first names to avoid confusion. We intend no disrespect by doing so.

required Bernard to construct a fifteen-foot-wide driveway and utility easement connecting the two properties and giving the new lot access to the street. The easement was memorialized in the filed minor subdivision map. Bernard paved a twelve-foot-wide driveway and added a three-foot-wide "vegetative buffer" on the sides.

In 1987, Bernard conveyed 821 Trenton Avenue to Robert, while retaining ownership of the newly created lot at 821A Trenton Avenue. The deed for this transaction referenced the earlier subdivision and the access easement.

In 2013, Bernard conveyed the residence at 821A Trenton Avenue to another of his sons, William Hildebrandt, and William's wife. This deed also stated there was "an easement for access and egress to said [l]ot, permanent, to run with the land, [fifteen feet] in width along the northeast boundary" of 821 Trenton Avenue.

In 2014, William and his wife conveyed 821A Trenton Avenue to the Smiths. This deed also referenced the easement. Robert continued to live at 821 Trenton Avenue.

In June 2018, the Smiths filed an application with the Board to subdivide 821A Trenton Avenue into two lots. Chadd Smith planned to let his parents live in the existing house on one of the lots and to construct a residence on the second

A-1929-20

lot for himself and his family. The Smiths also sought approval for several variances, including a rear yard setback, lot frontage upon an approved street because neither lot had direct access to a public right of way,[2] and a deck setback. The Smiths published notice of their application in the local newspaper and gave written notice to all of their neighbors, including plaintiffs, who lived within 200 feet of 821A Trenton Avenue.

The Board conducted four public hearings concerning the application. Chadd Smith testified about his plans for the property. He stated he was able to access his property over the easement while towing a trailer and a twenty-four-foot boat without any difficulty. He also testified that an emergency vehicle once used the easement to get to his property when he had a gas line leak. Smith told the Board he was an electrical contractor but operated his business at a separate location in Point Pleasant Beach.

William Parkhill, P.E. testified as a civil engineering expert on the Smiths' behalf. He opined that the variances the Smiths sought were de minimis in nature and, if approved, both lots created by the subdivision would meet all of the Board's zoning requirements.

---

[2] However, the Smiths had access to Trenton Avenue by way of the fifteen-foot-wide easement running across 821 Trenton Avenue.

A-1929-20

Plaintiffs' fire safety expert, Mark Bagniewski, testified the easement should be twenty-feet wide to allow fire safety equipment to have access to 821 Trenton Avenue. The Borough Fire Marshal agreed that a twenty-foot-wide easement would be preferable to a fifteen-foot-wide access route. However, the Marshal conceded that a fire truck would be able to access the subdivided property by using the existing easement. Matthew Robinson, P.E., a civil engineer, testified that the distance between the Smiths' new home and the nearest fire hydrant was consistent with other neighboring homes in the borough.[3] To further allay any concerns in this area, the Smiths agreed to provide fire sprinklers to service the new home.

Andrew Janiw, a licensed professional planner, testified on the Smiths' behalf. Janiw stated the Board's 1986 subdivision approval did not prohibit any additional subdivisions on the property. He opined that the proposed home fit in with the common development scheme in the surrounding neighborhood. Janiw also pointed out that even with the subdivision, both of the new lots would still exceed the 7,500 square foot minimum size zoning requirements. Plaintiffs'

---

[3] According to Robinson, some of the other neighbors had access driveways that were over 600 feet away from the nearest hydrant. The Smiths' access easement was only 278 feet long.

expert, Barbara Wooley Dillon, P.P., disagreed with Janiw's assessment and asserted the new home would provide no benefit to the community.

Finally, several neighbors testified in opposition to the application. They expressed concern over possible drainage and flooding issues, fire safety, and other matters.

After considering all of the evidence, the Board voted to approve the Smiths' application. In the comprehensive Resolution it issued on December 14, 2018, the Board found that the proposal should be approved under both N.J.S.A. 40:55D-70(c)(1) and (c)(2). The Board noted that the Smiths' property was "unusually situated in that is a landlocked parcel created by way of subdivision in 1986 providing for access from Trenton Avenue through [821 Trenton Avenue] via a [fifteen-foot] access easement."

The Board found that "[t]he non-conformities as to street frontage and setback are existing conditions of the site which will not be substantially exacerbated by the addition of [the second lot] and the construction of one additional single[-]family home." The Board also noted the Smiths agreed to pave the existing fifteen-foot-wide easement, remove any vegetation encroaching on that easement, and provide a twenty-foot-wide easement on the subdivided property connecting both of the lots.

A-1929-20

In addition, the Board concluded the remaining variances the Smiths sought were de minimis "in nature and create[d] no substantial detriment to the public good nor to the zone plan." Indeed, the Board determined the project would advance the purposes of the Borough's zoning scheme. As further conditions of its approval, the Board directed the Smiths to submit a drainage plan for Board approval to address the neighbors' concern on that issue; provide a landscape plan for Board approval; install a fire sprinkler system in the new home; and increase the size of the side setback to allow additional space for the neighbors' benefit.

In February 2019, plaintiffs filed their complaint challenging the Board's action. Among other things, plaintiffs alleged: (1) the Smiths did not provide adequate notice of the hearing on their application; (2) the Board did not adequately address their fire safety concerns; (3) the Smiths' application did not meet the statutory criteria for approval; and (4) the Smiths did not have a vested right to a fifteen-foot-wide easement over 821 Trenton Avenue.

After thoroughly canvassing the record and accurately applying the legal principles governing actions in lieu of prerogative writs, Judge Marlene Lynch Ford dismissed plaintiffs' complaint, holding that the Board's findings and conclusions were supported by the evidence and were not arbitrary, capricious,

A-1929-20

or unreasonable. Judge Ford addressed each of plaintiffs' four contentions in two separate written opinions. The first, issued on November 7, 2019, dealt with plaintiffs' claims concerning public notice, fire safety, and the statutory basis for the Board's approval. We summarize each of her rulings on these issues in turn, beginning with plaintiffs' contentions concerning notice.

Plaintiffs concede that the Smiths gave notice of their application to all property owners living within 200 feet of their property on 821A Trenton Avenue. However, they contend the Smiths should have also given notice to property owners within 200 feet of the easement on 821 Trenton Avenue. Because they did not, plaintiffs argue the Board should not have considered the Smiths' application.

N.J.S.A. 40:55D-12(a) requires the applicant to provide public notice of hearings concerning zoning and land use permit applications. It is well settled that proper notice is a jurisdictional prerequisite to a land-use board's authority to conduct a hearing on an application. Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 79 (1998); Perlmart of Lacey, Inc. v. Lacey Twp. Planning Bd., 295 N.J. Super. 234, 236 (App. Div. 1996). If the content of the notice is defective or those entitled to receive notice are not

served, the notice is invalid, and the board is not authorized to act on the application.  Stafford, 154 N.J. at 79.

N.J.S.A. 40:55D-11 establishes the required content for these notices.  This statute provides that a notice must

> state the date, time[,] and place of the hearing, the nature of the matters to be considered and, . . . an identification of the property proposed for development by street address, if any, or by reference to lot and block numbers as shown on the current tax duplicate in the municipal tax assessor's office, and the location and times at which any maps and documents for which approval is sought are available [for review].
>
> [(emphasis added).]

We have interpreted N.J.S.A. 40:55D-11 to require "an accurate description of what the property will be used for under the application."  Perlmart, 295 N.J. Super. at 238.  To fulfill that prerequisite, the application must describe "the nature of the matters to be considered" in such a "common sense description of the nature of the application . . . that the ordinary layperson could understand its potential impact upon him or her . . . ."  Id. at 236, 239.

N.J.S.A. 40:55D-12(b) identifies the property owners the applicant must notify of the hearings.  This provision states that "notice of a hearing requiring public notice . . . shall be given to the owners of all real property . . . located in

9

the State and within 200 feet in all directions <u>of the property which is the subject</u> <u>of such hearing</u> . . . ."  (emphasis added).

Here, Judge Ford found the only property that was "the subject" of the hearing under N.J.S.A. 40:55D-12(b) was the Smiths' property at 821A Trenton Avenue, which is the property they sought to subdivide and obtain variances for in order to build the new house.  Because the Smiths did not propose any changes to the fifteen-foot-wide easement on Robert's property, Judge Ford concluded the Smiths did not need to notify property owners within 200 feet of 821 Trenton Avenue of their proposal.

In so ruling, the judge rejected plaintiffs' reliance upon our decision in <u>Brower Dev. Corp. v. Plan. Bd. of Twp. of Clinton</u>, 255 N.J. Super. 262 (App. Div. 1992).  In that case, the applicant asked to build a secondary access road as part of its proposed development of over 200 condominiums.  <u>Id.</u> at 263-64. Because the construction of this entirely new roadway was a major part of the applicant's project, we held that the roadway should also be deemed "part of the property that [is] the subject of the . . . hearing" under N.J.S.A. 40:55D-12(b). <u>Id.</u> at 270.  Here, however, Judge Ford found the Smiths' "application did not propose any expansion or revision" to the easement on 821 Trenton Avenue.

Therefore, the "subject property" only included their property at 821A Trenton Avenue.

Plaintiffs also argued that the content of the Smiths' notice was inadequate because it did not specifically mention N.J.S.A. 40:55D-36. Judge Ford found this argument lacked merit.

Under N.J.S.A. 40:55D-35, "[n]o permit for the erection of any building or structure shall be issued unless the lot abuts a street giving access to such proposed building or structure." However, N.J.S.A. 40:55D-36 states:

> Where the enforcement of [N.J.S.A.] 40:55D-35[] would entail practical difficulty or unnecessary hardship, or where the circumstances of the case do not require the building or structure to be related to a street, the board of adjustment may upon application or appeal, vary the application of [N.J.S.A.] 40:55D-35[] and direct the issuance of a permit subject to conditions that will provide adequate access for firefighting equipment, ambulances[,] and other emergency vehicles necessary for the protection of health and safety . . . .

Plaintiffs asserted the Smiths' notice of the hearing was deficient because it did not state they were seeking relief under N.J.S.A. 40:55D-36. However, N.J.S.A. 40:55D-11, which states what the notice must contain, does not require the applicant to list the specific variances he or she seeks. Therefore, the Smiths

11

did not have a responsibility to list N.J.S.A. 40:55D-36 in the hearing notice they served on the neighboring property owners.

Plaintiffs argued the Smiths failed to state in the notice that Chadd Smith planned to operate his electrical contracting business from the new residence he planned to construct on the subdivided property. However, the Smiths never asked for a use variance and Chadd denied any intention to use the property for a business purpose. Therefore, Judge Ford rejected plaintiffs' contention.

Plaintiffs next asserted the Board improperly concluded that the Smiths met the fire safety requirements of N.J.S.A. 40:55D-36. However, Judge Ford found there was ample evidence in the record to support the Board's conclusion that the Smiths provided adequate access for firefighting and other emergency equipment at both their current residence and the house they intended to build when they divided the property.

There was an existing fifteen-foot-wide access driveway from Trenton Avenue to the Smiths' property, and they agreed to construct a twenty-foot driveway across their own land. Chadd Smith testified emergency vehicles had accessed his property on at least one prior occasion and he was able to maneuver a trailer and a twenty-four-foot boat down the easement on 821 Trenton Avenue. That driveway was shorter than other driveways in the area. In addition, the

12

Board required the Smiths to install a fire sprinkler system in their new home as a condition of approval. Under these circumstances, Judge Ford stated:

> Although not optimal, the fire marshal conceded emergency vehicles would have access to the property. The Board coupled this with improvements to the pre-existing easement and installation of the fire suppression system. This court cannot find the Board acted inconsistent with the Municipal Land Use Laws, or that it acted in an arbitrary, unreasonable, or capricious manner in coming to this decision.

Plaintiffs' third contention was that the Board incorrectly determined the Smiths' application met the requirements of N.J.S.A. 40:55D-70(c)(1) and (c)(2). By way of background, N.J.S.A. 40:55D-70(c)(1) states:

> The board of adjustment shall have the power to:
>
> (c) (1) Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 [] of this act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship . . . .

A-1929-20

The above hardship is known as the "positive criteria" required for a (c)(1) variance. See Jock v. Zoning Bd. of Adjustment of Twp. of Wall, 184 N.J. 562, 575 (2005); Nash v. Bd. of Adjustment of Morris Twp., 96 N.J. 97, 102 (1984). The applicant bears the burden of establishing that the particular conditions create a hardship. Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 30 (2013). Hardship, under (c)(1), "refers solely to the particular physical condition of the property, not personal hardship to its owner, financial or otherwise." Jock, 184 N.J. at 590.

Applicants for a variance under (c)(1) must also satisfy the "negative criteria":

> No variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
>
> [N.J.S.A. 40:55D-70(d); see also Nash, 96 N.J. at 102.]

A zoning board must balance these negative criteria against the positive criteria. See Yahnel v. Bd. of Adjustment of Jamesburg, 79 N.J. Super. 509, 519 (App. Div. 1963).

A board of adjustment may also approve a subdivision of property under N.J.S.A. 40:55D-70(c)(2). Our Supreme Court succinctly described the test for granting a (c)(2) variance as follows:

> N.J.S.A. 40:55D-70(c)(2) permits a variance for a specific property, if the deviation from bulk or dimensional provisions of a zoning ordinance would advance the purposes of the zoning plan and if the benefit derived from the deviation would substantially outweigh any detriment. The applicant bears the burden of proving both the positive and negative criteria.
>
> [Ten Stary Dom, 216 N.J. at 30.]

Satisfaction of the positive criteria requires "proof that the characteristics of the property present an opportunity to put [it] more in conformity with development plans and advance the purposes of zoning." Ibid. The purposes of zoning include promoting "public health [and] safety" and a "desirable visual environment"; providing "adequate light, air[,] and open space"; securing "safety from fire, flood, [and] panic"; and providing "sufficient space in appropriate locations for a variety of . . . uses . . . in order to meet the needs of all New Jersey citizens[.]" N.J.S.A. 40:55D-2. As to the negative criteria, the applicant must prove "that the variance would not result in substantial detriment to the public good or substantially impair the purpose of the zone plan." Ten Stary Dom, 216 N.J. at 30.

15

Contrary to plaintiffs' assertions, Judge Ford found the Board properly concluded the Smiths' application met these statutory criteria. The judge noted that other than the de minimis "setback variances (rear yard setback, lot frontage upon an approved street, and deck . . . setback), the proposed development [was] fully compliant with the bulk requirements of the zone." The judge adopted the Board's finding that

> [t]his subdivision will not impair the intent of the zone, as the proposed lots are consistent in terms of the lot area, the lot size[,] and the density of the area. . . . The existing home and proposed home are not excessive in terms of building coverage. . . . The proposed lots benefit the entire community, as they more closely conform to the zoning standards in the area as opposed to the existing oversized lot. . . . The proposed lots will be similar in size to the neighborhood, contain similar sized homes[,] and provide similar sized setbacks.

Judge Ford further found that the project would "create no substantial detriment to the public good nor to the zone plan." Thus, the judge concluded "variance relief was appropriate under (c)(1) and (c)(2). The conditions attached to the approval by the Board achieved legitimate objectives of zoning, and appropriately addressed the concerns of the objecting neighbors."

Finally, Judge Ford addressed plaintiffs' contentions concerning the scope of the existing fifteen-foot-wide easement in both her November 7, 2019 and February 3, 2021 written decisions. Plaintiffs argued Bernard never intended

16

that the easement would serve more than the single-family home after he subdivided the property in 1986. Plaintiffs also alleged the Board's decision inappropriately expanded the scope of the easement running across Robert's property at 821 Trenton Avenue because he and Bernard had installed a three-foot wide vegetative buffer that effectively reduced the size of the easement from fifteen- to twelve -feet in width.

Judge Ford conducted a hearing on plaintiffs' claims at which Robert, Conti, and Chadd Smith testified. After considering their testimony and the documentary record, the judge found that

> [t]he approval for the 1986 minor subdivision did not restrict any future development of the property. If Bernard . . . or the Board intended the access easement to service only one residential lot, this was not articulated or set forth either on the filed subdivision map or upon any other agreement between the parties. When William . . . marketed his property the published real estate listing referenced that a subdivision was possible. . . . The expectation of [the Smiths'] predecessor in title, William . . . , clearly was that the easement would be the access to any new lots.
>
> . . . There are no facts to support [p]laintiffs' claim that no further development was intended at the time the easement was granted[.] Therefore, the court is compelled to find that the expectation of all relevant parties was that the easement would access one or all legally created lots on the rear landlocked lot, by way of the [fifteen-]foot[-]wide easement for access to the property.

17

Judge Ford also found that the parties always referred to the easement as being fifteen feet wide. Indeed, the easement's width was a specific condition for the Board's approval of the 1986 subdivision and was reflected on the filed subdivision map. The judge further observed that "[t]he fact that [three] feet became a 'buffer' of vegetation is of no consequence, since the right to benefit from access over this parcel was created at the same time as [the Smiths'] lot, which is the subject of this application." Therefore, Judge Ford held that the Board properly permitted the Smiths to access and pave the entire fifteen-foot-wide driveway granted to them through Bernard's easement.

On appeal, plaintiffs again raise the same four contentions they unsuccessfully presented before Judge Ford. Plaintiffs contend:

> I.   The Court Below Erred in its Determination that Notice was Effective.
>
> a.   Mr. Smith did not notify members of the public living within 200 feet in all directions of the access easement.
>
> b.   The Smiths did not provide notice for a variance in accordance with [N.J.S.A.] 40:55D-36.
>
> c.   The Smiths, Board[,] and Court failed to address the need [for] a D-1 Use Variance.

18

II.     The Court Erred in its Concurrence With the Board that this Proposal Adequately Addressed Fire Safety.

III.    The Court[']s Determination That the Board's Approval of the Applicant's Use Variance was Proper was Erroneous as the Application Did not Meet the Statutory Criteria.

    a.      The benefits that derive from creating an additional house are outweighed by the substantial negative impact.

    b.      The Board lacked any jurisdiction over the Hildebrandt lot.

    c.      The driveway is too narrow to support fire equipment.

    d.      This request cannot overcome the substantial burden it creates.

IV.     The Court below erred in its Determination That the Defendants Have a Vested Right to the Use of a [fifteen]-foot-wide Access Easement, Inclusive of the [three]-foot Vegetative Buffer.

    a.      Easements in general.

    b.      Easements are created three different ways.

    c.      No express easement exists.

    d.      No easement by prescription exists.

        i.      An implied easement by necessity exists.

A-1929-20

"[W]hen reviewing the decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court." Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004). Thus, our review of the Board's action is limited. Bressman v. Gash, 131 N.J. 517, 529 (1993) (holding that appellate courts are bound by the same scope of review as the Law Division and should defer to the local land-use agency's broad discretion).

In reviewing a municipal zoning board's decision, courts must be mindful that the Legislature vested these boards with the discretion to make decisions that reflect the character and level of development within their municipality. Booth v. Bd. of Adjustment of Rockaway Twp., 50 N.J. 302, 306 (1967). A planning board's discretionary decisions carry a rebuttable presumption of validity. Harvard Enters., Inc. v. Bd. of Adjustment of Madison, 56 N.J. 362, 368 (1970).

It is well-established that "a decision of a zoning board may be set aside only when it is 'arbitrary, capricious[,] or unreasonable.'" Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002) (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)). "[P]ublic bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their

delegated discretion." <u>Jock</u>, 184 N.J. at 597.  Therefore, "[t]he proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record."  <u>Ibid</u>.

The burden is on the challenging party to overcome this highly deferential standard of review.  <u>See</u>  <u>Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment</u>, 152 N.J. 309, 327 (1998).  A court must not substitute its own judgment for that of the local board unless there is a clear abuse of discretion. <u>See</u> <u>Cell S.</u>, 172 N.J. at 81-82.  As we stated in <u>CBS Outdoor, Inc. v. Borough of Lebanon Planning Board</u>, 414 N.J. Super. 563, 577 (App. Div. 2010), "[e]ven were we to harbor reservations as to the good judgment of a local land use agency's decision, 'there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved.'" (quoting <u>Kramer v. Bd. of Adjustment, Sea Girt</u>, 45 N.J. 268, 296-97 (1965)).

Applying these standards, we discern no basis for disturbing Judge Ford's well-reasoned decision to uphold the Board's approval of the Smiths' application for the subdivision of their property and the minor variances they sought as part of this proposal.  As the judge properly found, the Board's action is clearly supported by sufficient credible evidence in the record and is not arbitrary,

capricious, or unreasonable.  Plaintiffs' arguments are without sufficient merit to warrant further discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).  We affirm substantially for the reasons set forth in Judge Ford's cogent written decisions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1929-20