777 A.2d 334

PHEASANT BRIDGE CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. TOWNSHIP OF WARREN, IN SOMERSET COUNTY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT–RESPONDENT.

Argued January 17, 2001—Decided August 2, 2001.

*Joseph E. Murray,* argued the cause for appellant, (*Joseph E. Murray & Associates,* attorneys; *Mr. Murray* and *Jay B. Bohn,* on the briefs).

*Timothy P. Beck,* argued the cause for respondent, (*DiFrancesco, Kunzman, Coley, Yospin, Bernstein & Bateman,* attorneys).

The opinion of the Court was delivered by

LaVECCHIA, J.

The core issue in this appeal is whether a zoning ordinance increasing the minimum lot size for permitted residential development of an extensive tract of land along the northern perimeter of Warren Township ("Township") is valid as applied to plaintiff's property. Secondarily, the appeal presents the question whether a taking of plaintiff's property has occurred irrespective of whether the ordinance is valid as applied. The trial court concluded that the zoning ordinance was arbitrary, capricious, and unreasonable as applied, and that a taking of property without compensation had occurred. The Appellate Division reversed on both issues. We granted certification, 165 *N.J.* 489, 758 *A.*2d 648 (2000), and now reinstate the trial court's determination invalidating the zoning ordinance because it is arbitrary, capricious, and unreasonable as applied to plaintiff's property. We hold further that plaintiff has no cognizable claim that it experienced a temporary taking during the period in which it successfully challenged the ordinance.

I.

In December 1986, plaintiff, Pheasant Bridge Corporation, purchased 28.98 acres of land in Warren Township zoned to permit single-family homes on a minimum lot size of one-and-one-half acres. That allowed plaintiff to enjoy a yield of eight to fifteen subdivided lots on its land. Starting in 1987, it sought to develop the property for residential subdivision in accordance with the existing ordinance. As a first step, plaintiff resolved an issue involving sewerage capacity for the development. A lawsuit against the local sewerage authority ultimately was settled after plaintiff paid $42,000 to secure participation in a reserved sewerage capacity program.

While plaintiff was pursuing development, the Warren Township Planning Board adopted a Town Master Plan in January 1990 that included a recommendation for the adoption of an environmental

protection zone (EP–250) within the township. That zone included:

Areas of significant (severe) economic constraints.... The unit yield shall be determined on non-environmentally constrained land at one unit per six acres.... Acres of accessible, and contiguous buildable uplands which are greater than 20 acres are considered appropriate for uses other than strictly large lot single-family residential or a hamlet. Appropriate conditional uses could consist of nursing homes, small scale retirement facilities, and recreation facilities for which additional density might be granted. Areas of severe environmental constraints should be preserved as undisturbed open space, although agricultural areas with significant wood lots (with a minimum of 50 acres) would be appropriate for golf courses or some other larger scale recreational use, provided that wooded areas are preserved to the greatest extent possible.

The primary constraints found in this zone:

Open water;

0–1 foot depth to seasonal high table water;

Wetlands and wetlands buffers;

Steep slopes (over 19%);

100 and 500 year flood plains.

In 1993, plaintiff sought subdivision approval, but the Township adopted an ordinance creating the EP–250 zone in December 1993 before the application was perfected. That zone encompassed plaintiff's land as well as 778 other acres along the township's northern perimeter.

Section 16–9 of the ordinance listed the purpose of the EP–250 agricultural-residential environmental protection district as follows:

This zone includes areas of significant environmental constraints, as identified on the Environmental Constraints Map contained in the adopted Master Plan of Warren Township dated January 22, 1990. Development standards encouraged clustered single-family dwellings. Areas of accessible, and contiguous buildable uplands which are greater than 20 acres are considered appropriate for uses other than strictly large lot single-family residential or clustered single-family dwellings. Conditional uses consist of nursing homes, retirement facilities, private membership, non-profit and recreation facilities.

Section 16–9 increased the minimum lot size from the one-and-one-half acres allowed under the previous ordinance to a minimum lot size of six acres. Under the new ordinance plaintiff could develop no more than four lots on its land, rendering the project economically unfeasible in plaintiff's view. This action ensued.

The trial court held that the EP–250 zone was facially valid. The court determined that the minimum lot size was justified due to subsurface rock formations that would require one to 3.95 acres to provide for adequate individual septic systems because of the high water-table concerns. The court deferred to the Township's judgment that additional regulation was needed in view of the combination of environmental factors including flood plain, steep slopes, seasonable high water, and wetlands present throughout the EP–250 zone. It reasoned that the multiplicity of those factors supported enactment of the EP–250 zone. Indeed, plaintiff does not contest the validity of the zoning ordinance in respect of the other 778 acres that constitute the tract carved out by the Township along its northern border.

On the other hand, the court noted that there was evidence to support the view that the ordinance was arbitrary and capricious as applied to plaintiff's property. Nonetheless, the court concluded that that issue was better left to the Board of Adjustment for consideration in a variance application and determined not to reach the as-applied issue until after plaintiff made such an application.

On appeal, the Appellate Division affirmed the facial validity of the ordinance but remanded the matter to the trial court with the direction to consider the constitutionality of the ordinance as applied to plaintiff's property, and whether application of the ordinance constituted an uncompensated taking of plaintiff's property.

On remand, the trial court held that the EP–250 zoning was arbitrary as applied to plaintiff's property because the environmental concerns generating the creation of the EP–250 zone factually were inapplicable to plaintiff's property. The court had intimated as much in its first decision but expanded on its reasons for now holding that the ordinance was arbitrary, capricious, and unreasonable as applied. The trial court also held that a taking of plaintiff's property had occurred because the ordinance did not substantially advance a legitimate state interest.

On appeal for the second time, in an unpublished opinion the Appellate Division reversed the takings ruling of the trial court. The court concluded that the restrictions on plaintiff's land did not result in a taking of private property although the profit plaintiff could earn from development of the land had been reduced by operation of the revised zoning ordinance. The court determined that as long as a feasible use remains, no taking had occurred. Concerning the as-applied challenge, the Appellate Division concluded that inclusion of plaintiff's property in the EP–250 zone was consistent with the Township's overall concern for open space and preservation of farmland as generally expressed in amendments to its Master Plan. Plaintiff's action was dismissed in its entirety.

## II.

Municipalities possess broad police power to zone for the public good insofar as the Legislature delegates that authority. *Riggs v. Township of Long Beach,* 109 *N.J.* 601, 610, 538 *A.*2d 808 (1988). A strictly circumscribed judicial role in reviewing zoning regulations effectuates that broad zoning power. *Harvard Enters., Inc. v. Bd. of Adjustment,* 56 *N.J.* 362, 368, 266 *A.*2d 588 (1970); *see also Pascack Ass'n v. Mayor of Washington Tp.,* 74 *N.J.* 470, 481, 379 *A.*2d 6 (1977) (referring to "sound and long established principles concerning judicial respect for local policy decisions in the zoning field"); *Bow & Arrow Manor, Inc. v. Town of West Orange,* 63 *N.J.* 335, 343, 307 *A.*2d 563 (1973) (stating that function of court is not "to rewrite or annul a particular zoning scheme duly adopted by a governing body merely because the court would have done it differently"); *Kozesnik v. Township of Montgomery,* 24 *N.J.* 154, 167, 131 *A.*2d 1 (1957) (stating that judiciary should not exercise zoning power "indirectly by measuring the policy determination by a judge's private view"). Although a strong presumption of validity insulates a zoning ordinance from challenge, a plaintiff overcomes that presumption through an affirmative showing that the ordinance "in whole or in

application to any particular property" is "clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute." *Bow & Arrow Manor, Inc., supra,* 63 *N.J.* at 343, 307 *A.*2d 563; *accord Riggs, supra,* 109 *N.J.* at 610–11, 538 *A.*2d 808; *Zilinsky v. Zoning Bd. of Adjustment,* 105 *N.J.* 363, 368, 521 *A.*2d 841 (1987); *Harvard Enters., Inc., supra,* 56 *N.J.* at 368, 266 *A.*2d 588; *Gruber v. Mayor & Township Comm.,* 39 *N.J.* 1, 12, 186 *A.*2d 489 (1962); *Zampieri v. Township of River Vale,* 29 *N.J.* 599, 605–06, 152 *A.*2d 28 (1959); *Cobble Close Farm v. Bd. of Adjustment,* 10 *N.J.* 442, 451, 92 *A.*2d 4 (1952).

In evaluating whether a zoning ordinance is arbitrary, capricious, or unreasonable, a court's role is not to pass on the wisdom of the ordinance; that is exclusively a legislative function. *Home Builders League of S. Jersey, Inc. v. Township of Berlin,* 81 *N.J.* 127, 137, 405 *A.*2d 381 (1979); *Ward v. Township of Montgomery,* 28 *N.J.* 529, 539, 147 *A.*2d 248 (1959). Rather, a court engages in a review of the relationship between the means and ends of the ordinance. *Taxpayers Ass'n of Weymouth Township, Inc. v. Weymouth Township,* 80 *N.J.* 6, 21, 364 *A.*2d 1016 (1976); *Roselle v. Wright,* 21 *N.J.* 400, 410, 122 *A.*2d 506 (1956); *Schmidt v. Bd. of Adjustment,* 9 *N.J.* 405, 416, 88 *A.*2d 607 (1952). In the context of a zoning challenge,

> the means selected must have real and substantial relation to the object sought to be attained, and the regulation or proscription must be reasonably calculated to meet the evil and not exceed the public need or substantially affect uses which do not partake of the offensive character of those which cause the problem sought to be ameliorated.
>
> [*Kirsch Holding Co. v. Borough of Manasquan,* 59 *N.J.* 241, 251, 281 *A.*2d 513 (1971).]

Put another way, the fundamental question in all zoning cases "is whether the requirements of the ordinance are reasonable under the circumstances." *Vickers v. Township Comm.,* 37 *N.J.* 232, 245, 181 *A.*2d 129 (1962), *appeal dismissed and cert. denied,* 371 *U.S.* 233, 83 *S.Ct.* 326, 9 *L.Ed.*2d 495 (1963), *modified on other grounds by S. Burlington County N.A.A.C.P. v. Township of Mount Laurel,* 92 *N.J.* 158, 276–77, 456 *A.*2d 390 (1983); *see also*

Berger v. State, 71 N.J. 206, 223–24, 364 A.2d 993 (1976) (stating that zoning regulation "must be reasonably designed to resolve the problem without imposing unnecessary and excessive restrictions on the use of private property"); Katobimar Realty Co. v. Webster, 20 N.J. 114, 123, 118 A.2d 824 (1955) ("Excesses in the realization of the statutory considerations are inadmissible."); Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 360, 94 A.2d 482 (1953) (noting that "it is settled that the burden is upon the one who attacks the particular ordinance in question to show clearly that it is unreasonable").

### III.

 Plaintiff concedes, as it must, that defendant pursued legitimate goals in zoning to preserve the environment, open space, and agriculture. Although the legitimacy of those purposes is beyond question, a landowner may challenge the application of an otherwise valid ordinance to a specific tract of property. Odabash v. Mayor of Dumont, 65 N.J. 115, 123, 319 A.2d 712 (1974); AMG Assocs. v. Township of Springfield, 65 N.J. 101, 104, 319 A.2d 705 (1974). In this appeal, the critical determination to be made is whether application of defendant's EP–250 zoning regulation to plaintiff's property rationally advances those purposes. "[A]n ordinance that may operate reasonably in some circumstances and unreasonably in others is not void in toto, but is enforceable except where in the particular circumstances its operation would be unreasonable and oppressive." Harvard Enters., Inc., supra, 56 N.J. at 368, 266 A.2d 588.

 Our review of the record reveals ample support for the trial court's conclusion that application of the zoning ordinance to plaintiff's property was arbitrary, capricious, and unreasonable. The trial court was intimately familiar with all aspects of this litigation, pretrying the case in October 1994, and trying the case in August 1995, and again on remand from the Appellate Division in November 1997. Through years of managing this litigation, including evaluating evidence and hearing witnesses, the trial

court developed a "feel" for the case that ought not be lightly disturbed. *Township of West Windsor v. Nierenberg,* 150 *N.J.* 111, 132–33, 695 *A.*2d 1344 (1997); *Caldwell v. Haynes,* 136 *N.J.* 422, 432, 643 *A.*2d 564 (1994). In response to plaintiff's contention that the zoning ordinance was arbitrary and capricious as applied to its property, the trial court relied on substantial evidence in the record to support its conclusion that "few of the environmental concerns which justified the passage of the ordinance apply to this apparently unique piece of property." The trial court fully explained that conclusion:

[T]here are aspects of hardship which result from the inclusion of Pheasant Bridge's property in the EP–250 zone. Both Warren's planner and Pheasant Bridge's testified that Pheasant Bridge's property, and in fact all property in the EP–250 district, was devoid of any steep slopes. It was also unclear that the property was located in any flood hazard area. The *only* environmental constraint to which the property in question was subject, was the high water table which could complicate construction and make a septic system not feasible, but it was undisputed that a building could be safely constructed on the site and sewer access would alleviate any septic system concerns. In fact, it seemed clear that Pheasant Bridge's property had unique access to the sanitary sewer's system, circumstances which could resolve any concerns about all environmental issues.

[Emphasis added.]

■ When the case returned on remand, the trial court did not deviate from its original belief that the environmental concerns that justified passage of the EP–250 zone did not pertain to plaintiff's property:

In the original decision in this matter, the Court noted that the environmental concerns which, in part, justified the passage of the ordinance did not apply to the property of Pheasant Bridge. The presence of wetlands was among the reasons for the passage of the offending ordinance, yet they are already heavily regulated and the field has been pre-empted by the State. Flood plains are regulated by both Warren and the State of New Jersey. The existing regulations appear completely adequate and the need for or even the advantage of, a six acre minimum lot size, was never clearly articulated. Warren also alleged that the presence of a high water table was a supporting factor as well, but the effect of that condition is lessened substantially by this property's access to sanitary sewers. While there are other concerns from a high water table, such as wet basements, those problems are readily avoided. Warren's concerns over properties with steep slopes has no application to the property since it contains no steep slopes. The purposes of Ordinance 92–24 advanced by Warren are therefore not served by the application of the ordinance to the property of Pheasant Bridge.

The trial court, therefore, made detailed findings based on substantial, credible evidence concerning the nature and extent of environmental constraints affecting plaintiff's property. The limited scope of appellate review requires deference to the trial court's findings when supported by adequate, substantial, and credible evidence. *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 *N.J.* 464, 475, 541 *A.2d* 1063 (1988); *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 *N.J.* 474, 484, 323 *A.2d* 495 (1974).

That adequate, substantial, and credible evidence supported the trial court's findings in this matter was confirmed by the Appellate Division. Although it reversed the trial court's judgment, the Appellate Division did not disturb the determination that plaintiff's property was not subject to the specific environmental constraints affecting the rest of the EP–250 zone. Nevertheless, the Appellate Division sustained the ordinance's application to plaintiff's property primarily on the basis that it perceived the ordinance as including among its intentions, besides environmental protection, the preservation of farmland because farmland is one of the listed uses of the EP–250 zone.

From its base of factual findings, the trial court concluded that the zoning ordinance was arbitrary and capricious as applied to plaintiff's property. Although a trial court's legal interpretations are not entitled to special deference, *Manalapan Realty, L.P. v. Township Comm.*, 140 *N.J.* 366, 378, 658 *A.2d* 1230 (1995), we agree with the trial court's legal conclusion in this matter. The dearth of environmental limitations on plaintiff's property leads us to conclude, as did the trial court, that the ordinance is arbitrary, capricious, and unreasonable as applied to plaintiff. We rely on enduring principles governing municipal exercise of the zoning power in reaching that conclusion. As this Court stated in *Home Builders, supra*, 81 *N.J.* at 138, 405 *A.2d* 381, "[t]he purposes sought to be accomplished [by a zoning ordinance] must justify the restrictions placed on the use of one's land[,]" and "[t]he means used to attain the ends must be reasonably related to those ends." Those well-established criteria are not met here

because defendant's zoning ordinance fails to accomplish its purposes when applied to plaintiff's property. The means-ends relationship is illusory. Plaintiff convincingly points to the lot immediately south and contiguous to its property as having essentially identical physical characteristics, yet that contiguous property is zoned to allow development at the one-and-one-half acre density that previously applied to plaintiff's property. The Township offers no justification for distinguishing between the two parcels. Indeed, at argument before this Court, the Township took the position that it encouraged plaintiff to apply for a variance. We find no justification for requiring plaintiff to seek variance relief.

In *Riggs v. Township of Long Beach, supra,* 109 *N.J.* at 617, 538 *A.*2d 808, this Court upheld the trial court's conclusion that the zoning ordinance at issue was invalid as arbitrary and unreasonable, and that after years of litigation, "[t]he time ha[d] come to bring [the] matter to a close." *Ibid.* Accordingly, the case was remanded to the Law Division for entry of an order declaring the challenged ordinance invalid and for regulation of the plaintiff's property under the prior zoning ordinance to permit subdivision of the property in line with its requirements. *Ibid.* Here, plaintiff has met its burden by affirmatively demonstrating that the means chosen do not bear any "real and substantial" relationship to the ostensible purposes of the zoning provision. It is time to bring this litigation to an end also.

Finally, we note for completeness that the Appellate Division was persuaded, in part, by the Township's argument that the EP–250 zone's purpose also was to preserve farmland and open space consistent with the Township's Master Plan. The trial court disposed of that explanation as follows:

> There is no dispute about the purpose of the EP–250 zone. In fact, the designation EP stands for 'Environmental Protection'. The Master Plan described the purpose: 'It is meant to guarantee the protection of environmentally sensitive features which are predominant in the area, to insure the continuation of this area as open space and recreation, promote agricultural retention where appropriate, and maintain the predominantly rural character.' In the original decision in this matter, the Court noted that the environmental concerns which, in part, justified the passage of the ordinance did not apply to the property of Pheasant Bridge....

> The only purposes for establishing the EP–250 zone which have application to the property of Pheasant Bridge are the goals of 'continuation of this area as open space and recreation ... and maintain the rural character.' The presence of those references in the Master Plan has not been the subject of argument in this matter. Such language suggests the goal of the ordinance is maintenance of the status quo. Since the property is now vacant, one apparent goal of the EP–250 requirements was the maintenance of the property in its vacant state.... [But] authority is generally seen as lacking for the establishment of lot sizes which are not supported by the requirement necessary to accommodate septic and water systems.
>
> Warren has submitted additional arguments which are founded on recent amendments to the Master Plan. For example, Warren has recently added the argument that the offending provisions of Ordinance 93–24 are justified by a desire to preserve farm land and six acres is the appropriate size under the Farmland Assessment Act. On its face that argument seems contrived because of its late arrival and its omission from the very substantial Master Plan adopted by the Planning Board. Furthermore, the soils map for the EP–250 zone shows the soil is ill suited for farming. Since it was not advanced at trial nor mentioned at the time the ordinance was enacted, it will not be further considered.
>
> [Citations omitted.]

We agree with the trial court's assessment that those later arguments advanced by the Township do not overcome the arbitrariness of applying the EP–250 zone requirements to plaintiff's property that was known to be different from the rest of the property in the zone. The parcel had been prepared for development with sewer capacity, was in the process of securing its approvals, and was virtually indistinguishable from the contiguous lot to its immediate south that had been allowed to remain at the one-and-one-half acre limit on subdivision size for residential development. We accept the trial court's findings and conclusions. "Arbitrary or unreasonable zoning ordinances cannot stand." *Home Builders, supra*, 81 *N.J.* at 137–38, 405 *A.2d* 381. The zoning ordinance is invalid as applied to plaintiff's property.

## IV.

 Having successfully challenged the municipal zoning ordinance as applied to its property, plaintiff contends that it is entitled to a financial remedy for the temporary taking of its property caused by operation of the invalidated zoning ordinance. Plaintiff acknowledges that regulatory delay, absent extraordinary

circumstances, does not constitute a temporary taking, but none-theless argues that it is entitled to damages as a remedy for the temporary taking during the period between the adoption and the as-applied invalidation of the EP–250 zone. We disagree. A *per se* compensable taking does not occur as a result of the temporary application of a zoning ordinance that is ultimately declared invalid in a judicial challenge to the municipal zoning authority.

 We note at the outset the coextensive protections afforded under article I, paragraph 20 of the New Jersey Constitution and the Fifth and Fourteenth Amendments of the United States Constitution against the government's taking of property without just compensation. *Littman v. Gimello,* 115 *N.J.* 154, 161, 557 *A.*2d 314, *cert. denied,* 493 *U.S.* 934, 110 *S.Ct.* 324, 107 *L.Ed.*2d 314 (1989). The United States Supreme Court has made clear that the Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church of Glendale v. County of L.A.,* 482 *U.S.* 304, 314, 107 *S.Ct.* 2378, 2385, 96 *L.Ed.*2d 250, 263 (1987) (discussing need for monetary remedy for "temporary" taking in context of zoning ordinance that denied plaintiff all beneficial use of its property). The Takings Clause "is designed not to limit the governmental interference with property rights per se but rather to secure compensation in the event of otherwise proper interference amounting to a taking." *Id.* at 315, 107 *S.Ct.* at 2385, 96 *L.Ed.*2d at 264 (emphasis omitted).[1]

---

[1] In *Eastern Enterprises v. Apfel,* 524 *U.S.* 498, 118 *S.Ct.* 2131, 141 *L.Ed.*2d 451 (1998), a majority of the Court reaffirmed those principles. *Id.* at 545, 118 *S.Ct.* at 2157, 141 *L.Ed.*2d at 484–85 (Kennedy, J., concurring in judgment and dissenting in part); *Id.* at 554, 118 *S.Ct.* at 2161, 141 *L.Ed.*2d at 490 (Breyer, J., dissenting) (joined by Justices Stevens, Souter, and Ginsburg). In a separate opinion, Justice Kennedy explained that the Takings Clause "has not been understood to be a substantive or absolute limit on the government's power to act. The Clause operates as a conditional limitation, permitting the government to do what it wants so long as it pays the charge." *Id.* at 545, 118 *S.Ct.* at 2157, 141 *L.Ed.*2d at 484 (Kennedy, J., concurring in judgment and dissenting in part). Similarly, Justice Breyer stated that the language of the Taking Clause suggests

██ Because we have determined that defendant's zoning ordinance is invalid as applied to plaintiff's property, we are not faced with an "otherwise proper [governmental] interference" that the Takings Clause presupposes. *Id.* at 314–15, 107 *S.Ct.* at 2385–86, 96 *L.Ed.*2d at 263–64. Instead, we are confronted with plaintiff's assertion that it experienced a temporary taking merely by having been subjected to an invalid ordinance during the time it took to challenge successfully the ordinance's application. Case law, including the decision in *First English*, does not support that conclusion.

The significance of *First English* relates only to the remedy available once a taking is established, as the Court assumed for purposes of its decision that the regulation at issue deprived the landowner of *all* beneficial use of his property and thus constituted a taking. *First English, supra*, 482 *U.S.* at 322, 107 *S.Ct.* at 2389, 96 *L.Ed.*2d at 268 (stating assumption that ordinance "has denied appellant all use of its property for a considerable period of years"). Moreover, the Court in *First English* specifically limited its holding to the facts presented, explaining that it did "not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and like which are not before us." *Id.* at 321, 107 *S.Ct.* at 2389, 96 *L.Ed.*2d at 268.

The takings issue in this appeal is quite different. Here, we are concerned with an invalid ordinance in which government went beyond the scope of its zoning power, rather than a valid ordinance that effected a taking. Unlike *First English*, this appeal implicates a challenge to the zoning ordinance itself, a question not

---

that "at the heart of the Clause lies a concern, not with preventing arbitrary or unfair government action, but with providing compensation for legitimate government action that takes 'private property' to serve the 'public' good." *Id.* at 554, 118 *S.Ct.* at 2161, 141 *L.Ed.*2d at 490 (Breyer, J., dissenting) (emphasis omitted). The Taking Clause "presupposes" that the government interference with property is otherwise valid. *Id.* at 545, 118 *S.Ct.* at 2157, 141 *L.Ed.*2d at 484 (Kennedy, J., concurring in judgment and dissenting in part).

before the Court in *First English.* Moreover, we see no distinction justifying the need to provide for interim monetary damages between regulatory delay in securing a change in, or variance from, a zoning ordinance and delay occasioned by resort to judicial processes to challenge application of a zoning ordinance to one's property. *Cf. MacDonald, Sommer & Frates v. County of Yolo,* 477 *U.S.* 340, 351, 106 *S.Ct.* 2561, 2567, 91 *L.Ed.*2d 285, 296 (1986) (holding taking claim not reviewable so long as property owner had opportunity to pursue variance or other form of relief that would permit development to proceed); *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 *U.S.* 172, 190–91, 105 *S.Ct.* 3108, 3118–19, 87 *L.Ed.*2d 126, 141 (1985) (declining to consider taking claim when long-term economic effects uncertain due to questions concerning whether restriction would be permanent). If such a distinction were accepted, it could have a chilling effect on land-use planning, for the adoption of an invalid ordinance could prove financially devastating to a municipality that was unsuccessful in its defense to a drawn-out constitutional challenge.

Moreover, we note the Appellate Division's critical observation that "plaintiff does not claim all beneficial use of its property was removed; it simply claims it could have made a more profitable use of its property." This Court has determined that neither diminution of land value itself nor impairment of the marketability of land alone constitutes a taking. *Gardner v. N.J. Pinelands Comm'n,* 125 *N.J.* 193, 259, 593 *A.*2d 251 (1991). And *First English* itself "merely h[e]ld that where the government's activities have already worked a taking *of all use of property,* no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." 482 *U.S.* at 321, 107 *S.Ct.* at 2389, 96 *L.Ed.*2d. at 268 (emphasis added); *see also Palazzolo v. R.I.,* —— *U.S.* ——, ——, 121 *S.Ct.* 2448, ——, 150 *L.Ed.*2d 592, ——, 69 *U.S.L.W.* 4605, 4612 (U.S. June 28, 2001) (holding that State Supreme Court did not err in rejecting regulatory takings claim where plaintiff not deprived of all economically beneficial use of parcel); *Littman, supra,* 115 *N.J.* at 164, 557 *A.*2d 314 (restating that inverse

condemnation requires total or substantial destruction of beneficial use of property); *Schiavone Constr. Co. v. Hackensack Meadowlands Dev. Comm'n,* 98 *N.J.* 258, 263, 486 *A.*2d 330 (1985) (determining in context of review of moratorium on all real estate development for period of nineteen months "that a compensable taking can occur when governmental action substantially destroys the beneficial use of private property"). Similarly, in evaluating a temporary taking claim, the Appellate Division in *Grand Land Co. v. Township of Bethlehem,* 196 *N.J.Super.* 547, 483 *A.*2d 818 (App.Div.1984), *certif. denied,* 101 *N.J.* 253, 501 *A.*2d 924 (1985), affirmed the invalidation of a zoning ordinance and agreed with the trial court that the plaintiff was

> not entitled to damages for an unlawful taking of its property. At the most that claim would be limited to interim damages between the adoption of the zoning ordinance amendment and its invalidation. During that period the property continued in agricultural use, clearly a reasonable use to which it was adapted and which was not economically unfeasible.
>
> [*Id.* at 552, 483 *A.*2d 818.]

The Appellate Division thus concluded that no temporary taking had occurred because the plaintiff had retained some economically beneficial use of its property.

The highest courts of other states have reached the same conclusion that a temporary taking requires a showing that a landowner was deprived of all economically beneficial use of property. *Miller & Son Paving, Inc. v. Plumstead Township,* 552 *Pa.* 652, 717 *A.*2d 483, 486 (1998) (determining that delays attributable to legal challenges to zoning provisions do not automatically constitute temporary taking because economically beneficial uses remained unaffected by invalid provision), *cert. denied,* 525 *U.S.* 1121, 119 *S.Ct.* 903, 142 *L.Ed.*2d 902 (1999); *Cornish Town v. Koller,* 817 *P.*2d 305, 308 (Utah 1991) (finding no temporary taking where zoning permitted continued farming practices and thus did not deprive plaintiff of all uses of property); *Chioffi v. City of Winooski,* 165 *Vt.* 37, 676 *A.*2d 786, 790 (1996) (concluding, in rejecting claim, that temporary taking requires showing of total denial of all economically beneficial use; regulatory delay result-

ing from zoning board denial of variance, granted ultimately through judicial intervention, did not constitute taking); *City of Va. Beach v. Va. Land Inv. Ass'n,* 239 *Va.* 412, 389 *S.E.*2d 312, 316 (1990) (determining *First English* inapposite and finding no temporary taking because plaintiff not deprived of all use of land); *cf. Smith v. Town of Wolfeboro,* 136 *N.H.* 337, 615 *A.*2d 1252, 1258 (1992) (noting that inherent delay in "process of obtaining subdivision approval, including appeals to the superior court and to this court, is one of the incidents of ownership. Any decrease in value of the subject property that occurs during the pendency of governmental decision making must be borne by the property owner" and is not taking); *Sea Cabins on the Ocean IV Homeowners Ass'n v. City of North Myrtle Beach,* 345 *S.C.* 418, 548 *S.E.*2d 595 (2001) ("[A]lthough a property owner who successfully challenges the applicability of a governmental regulation is likely to have suffered some temporary harm during the process, the harm does not give rise to a constitutional taking.").

Also instructive is a federal decision concerning a New Jersey zoning dispute, *John E. Long, Inc. v. Borough of Ringwood,* 61 *F.Supp.*2d 273, 276 (D.N.J.1998), *aff'd,* 213 *F.*3d 628 (3d Cir.2000), that considered whether denial of a landowner's re-zoning application constituted a temporary taking. Dismissing the plaintiffs' temporary takings claim, the court reasoned:

> The denial of Plaintiffs' application did deprive them of the best and most profitable use of their land.... The Borough's denial of the application did not, however, deprive Plaintiffs of all economically viable uses of the Property. Plaintiffs were still entitled to go ahead with the subdivision of the land and the building of homes on lots of three acres or more. What they could not do was subdivide the Property and build houses on lots of less than three acres. Therefore, Plaintiffs were certainly left with an economically viable use of their Property.
>
> [*Id.* at 288.]

That view is consistent with decisions of the Third Circuit Court of Appeals on the takings inquiry. *Bello v. Walker,* 840 *F.*2d 1124, 1131 (3d Cir.) (finding no taking where plaintiffs denied building permit but retained right to dedicate property to variety of other uses); *Pace Res., Inc. v. Shrewsbury Township,* 808 *F.*2d 1023, 1031 (3d Cir.) (finding no taking where plaintiff not stripped of all

economically viable uses of property, although denied best use or uses of property), *cert. denied,* 482 *U.S.* 906, 107 *S.Ct.* 2482, 96 *L.Ed.*2d 375 (1987).

The overwhelming weight of authority from the federal courts and other state courts, and of prior holdings of this Court, therefore, requires that a plaintiff demonstrate deprivation of all or substantially all economically beneficial uses of property to sustain a claim for a temporary taking. Here, the record indicates that plaintiff has not—and could not—make such a demonstration. That farming continued on the parcel during this litigation and that plaintiff retained the right to develop a conforming use of the property under the new ordinance are undisputed. Therefore, we conclude that the Appellate Division's dismissal of plaintiff's takings claim was appropriate.

## V.

Accordingly, we reverse that portion of the judgment of the Appellate Division that concerned plaintiff's as-applied challenge and remand the matter to the Law Division for restoration of the zoning that pertained to plaintiff's property prior to its inclusion in the EP–250 zone. We affirm that portion of the Appellate Division judgment dismissing plaintiff's takings claim.

*For affirmance in part, reversal in part, and remandment*— Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.