```
┌─────────────────────────────────────────────────────────┐
│              NOT FOR PUBLICATION WITHOUT THE              │
│            APPROVAL OF THE APPELLATE DIVISION             │
│                                                          │
│  This opinion shall not "constitute precedent or be binding upon any court." │
│  Although it is posted on the internet, this opinion is binding only on the  │
│    parties in the case and its use in other cases is limited. R. 1:36-3.     │
└─────────────────────────────────────────────────────────┘
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2963-16T4

LARRY HOLLOWAY,

    Plaintiff-Appellant,

v.

TOWNSHIP OF JACKSON; and
TOWNSHIP OF JACKSON ZONING
BOARD OF ADJUSTMENT,

    Defendants-Respondents.

_____

        Argued June 28, 2018 — Decided July 16, 2018

        Before Judges Yannotti and Haas.

        On appeal from Superior Court of New Jersey,
        Law Division, Ocean County, Docket No. L-0819-
        14.

        Peter H. Wegener argued the cause for
        appellant (Bathgate, Wegener & Wolf, PC,
        attorneys; Peter H. Wegener, on the briefs).

        Robin La Bue argued the cause for respondent
        Township of Jackson (Gilmore & Monahan, PA,
        attorneys; Robin La Bue, on the brief).

        Sean D. Gertner argued the cause for
        respondent Township of Jackson Zoning Board
        of Adjustment (Gertner & Gertner, LLC,
        attorneys; Sean D. Gertner, on the brief).

PER CURIAM

Plaintiff Larry Holloway appeals from an order entered by the Law Division on February 2, 2017, which rejected his challenge to the validity of a zoning ordinance adopted by the Township of Jackson (Township), and affirmed the partial denial by the Township's Zoning Board of Adjustment (Board) of his variance application. We affirm.

I.

Plaintiff is the owner of approximately 17.4 acres of land in the Township. Plaintiff has owned the property for more than twenty-one years. Prior to 2001, the property was placed in the R-1 zone, in which one residential unit per acre is permitted. In 2001, the Township amended the zoning ordinance and placed plaintiff's property in the R-3 zone, where one residential unit per three acres is permitted.

It is undisputed that between 1986 and 2002, properties in the area surrounding plaintiff's property were either developed in conformity with the previous R-1 density standards or the standards for the R-40 zone, in which residential lots of 40,000 square feet (slightly less than one acre) are permitted. According to plaintiff, development of nearby tracts was constrained by certain environmental regulations.

In 2013, plaintiff applied to the Board for a density variance to permit the development of his property with thirteen residential lots, plus one additional lot for storm water management. The Township's R-3 zoning restrictions only permit five residential lots on plaintiff's property. The density and certain access issues were to be addressed separately.

On November 6 and December 18, 2013, the Board conducted a public hearing on the density issues. On February 5, 2014, the Board adopted a resolution, which denied plaintiff's application for thirteen residential lots and one drainage lot, but allowed plaintiff to develop the property with seven residential lots.

Thereafter, plaintiff filed a complaint in the trial court seeking a determination that the application of R-3 zoning restrictions to his property was invalid. He also sought a judgment reversing the Board's partial denial of his application for a density variance.

The trial court filed a written opinion finding that as applied to plaintiff's property, the ordinance is valid. The court also found that the Board had properly exercised its discretion by granting plaintiff's variance request in part. The court concluded the Board's decision was not arbitrary, capricious, or unreasonable. The court memorialized its opinion in an order dated February 2, 2017. This appeal followed.

On appeal, plaintiff argues the trial court erred by finding that the density restrictions for the Township's R-3 zone are valid as applied to his property. We disagree.

Municipal ordinances are presumed to be valid, and the presumption of validity may not be overcome unless the ordinance is "clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute." Riggs v. Long Beach Twp., 109 N.J. 601, 610-11 (1988) (quoting Bow & Arrow Manor v. Town of West Orange, 63 N.J. 335, 343 (1973)). The party challenging the ordinance "bears the burden of overcoming the presumption." Id. at 611 (citing Ward v. Montgomery Twp., 28 N.J. 529, 539 (1959); La Rue v. East Brunswick, 68 N.J. Super. 435, 454 (App. Div. 1961)).

"Courts should not question the wisdom of an ordinance, and if the ordinance is debatable, it should be upheld." Ibid. (citing Bow & Arrow Manor, 63 N.J. at 343). Although the court's role in reviewing the validity of an ordinance is "circumscribed," the court may declare a zoning ordinance invalid if it does not meet certain criteria. Ibid. (citing Taxpayer Ass'n of Weymouth Twp. v. Weymouth Twp., 80 N.J. 6, 21 (1976)).

The zoning ordinance must advance one of the purposes of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163. Ibid.

(citing Weymouth Twp., 80 N.J. at 21). The ordinance must be "substantially consistent" with the land use and housing elements of the municipality's master plan, unless the statutory requirements are otherwise satisfied. Ibid. The ordinance also must comply with the constitutional limits on the zoning power. Ibid. Moreover, the ordinance must be adopted in accordance with applicable procedural requirements. Id. at 612 (citations omitted).

In its opinion, the trial court found that plaintiff failed to overcome the ordinance's presumption of validity. The court noted that under N.J.S.A. 40:55D-2, a municipality may enact a zoning ordinance:

> a. [t]o encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare;
>
>      . . . .
>
> c. [t]o provide adequate light, air and open space;
>
>      . . . .
>
> e. [t]o promote the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons, neighborhoods, communities, and regions and preservation of the environment;
>
>      . . . .

5

g. [t]o provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens;

. . . .

j. [t]o promote the conservation of historic sites and districts, open space, energy resources and valuable natural resources in the State and to prevent urban sprawl and degradation of the environment through improper use of land;

. . . .

p. [t]o enable municipalities the flexibility to offer alternatives to traditional development, through the use of equitable and effective planning tools including clustering, transferring development rights, and lot-size averaging in order to concentrate development in areas where growth can best be accommodated and maximized while preserving agricultural lands, open space, and historic sites . . . .

The court found the Township changed the density restrictions in the subject area to achieve a "better balance" of residential, commercial, and industrial development. The court determined that a governing body has the discretion to reduce residential densities in an effort to direct commercial or industrial investments. The record supports the trial court's determination that the ordinance

6

advances one or more of the objectives set forth in N.J.S.A. 40:55D-2.

Plaintiff argues, however, that the purpose of the density change was to protect the environment and to discourage development in flood hazard and wetland areas, areas with soils having poor drainage characteristics, and environmentally-sensitive areas. Plaintiff contends his property does not present any of these concerns.

However, plaintiff did not present any evidence in the trial court showing that its property does not have the same or similar environmental constraints as other affected properties. Notably, in its 2001 master plan, the Township did not state that every parcel affected by the density change had environmental constraints that required the downsizing.

Moreover, the zoning change was not driven solely by the need to protect the environment. The change was adopted in response to the rapid residential development of the municipality. The change also was adopted to create more open space, achieve a better balance of residential, commercial, and industrial development, and establish appropriate population densities. As the trial court recognized, decreasing the level of residential development in the areas affected by the change advances these goals, which are permissible objectives under the MLUL.

7

In support of his argument that application of the density change to his property is arbitrary and unreasonable, plaintiff relies upon Pheasant Bridge Corp. v. Township of Warren, 169 N.J. 282 (1999). In that case, the plaintiff purchased land which was zoned to permit single-family homes on lots of at least one-and-one-half acres. Id. at 286. The municipality changed the zoning ordinance and increased the minimum lot size to six acres. Id. at 287. The plaintiff challenged the ordinance, and the trial court found that the increase in the minimum lot size was justified by a "combination of environmental factors including flood plain, steep slopes, seasonal high water, and wetlands" throughout the zone. Id. at 288.

We held the ordinance was facially valid, but we remanded the matter to the trial court to determine whether application of the ordinance to the plaintiff's property resulted in an uncompensated taking of the plaintiff's property. Ibid. The Supreme Court ultimately held that the application of the ordinance was arbitrary, capricious, and unreasonable because the environmental concerns that justified passage of the zoning change did not apply to the plaintiff's property. Id. at 292-93.

Plaintiff's reliance upon Pheasant Bridge Corp. is misplaced. As stated previously, the Township's zoning change was not based solely upon environmental constraints or concerns. The zoning

change also was adopted to address the rapid residential development of the Township; create more open space; and achieve a better balance of residential, commercial, and industrial development. Therefore, application of the zoning change to plaintiff's property was not arbitrary, capricious, or unreasonable.

Plaintiff further argues for the first time on appeal that as a result of the "grandfather clause" that the Township adopted in 2009, the density provisions of the zoning ordinance is arbitrary, discriminatory, and violates the uniformity requirement of N.J.S.A. 40:55D-62. The Township's Code states in relevant part that:

> Any structure conforming as to use in Zones R-2, R-3 or R-5 that has received a certificate of occupancy or building permit or a structure conforming on a lot that has received preliminary subdivision approval as of the effective date of this Ordinance shall remain conforming under the regulations existing as of the date of such certificate of occupancy, building permit or approval.
>
> [Twp. of Jackson, N.J., Code § 244-46(E).]

We will not address an issue raised for the first time on appeal, unless the issue pertains to the trial court's jurisdiction or involves a matter of great public concern. Neider v. Royal Indemn. Ins. Co., 62 N.J. 229, 234 (1973). The claim that the relevant provisions of the Township's ordinance violate the MLUL's

conformity requirement does not involve the court's jurisdiction and it is not a matter of general public interest. Therefore, we will not address this issue.

### III.

Plaintiff further argues that the Board's decision to deny in part his variance application is arbitrary, capricious, and unreasonable.

We note initially that because of their "peculiar knowledge of local conditions," zoning boards "must be allowed wide latitude in the exercise of delegated discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)). The decisions of zoning boards "enjoy a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Ibid. (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002)). The party challenging a zoning board's decision must show that it was "arbitrary, capricious, or unreasonable." Ibid. (quoting Kramer, 45 N.J. at 296).

Here, plaintiff sought a variance under N.J.S.A. 40:55D-70(d)(5), which authorizes a zoning board "[i]n particular cases for special reasons" to grant a variance allowing an increase in the "permitted density" under the zoning ordinance. To establish

"special reasons" for a density variance, the so-called "positive criteria," the applicant must show "the site will accommodate the problems associated with [a greater density] than permitted by the ordinance." Grubbs v. Slothower, 389 N.J. Super. 377, 389 (App. Div. 2007) (alteration in original) (quoting Randolph Town Ctr. Assocs. v. Twp. of Randolph, 324 N.J. Super. 412, 417 (App. Div. 1999)). The applicant is required to establish "that despite the proposed increase in density above the zone's restrictions," the project will nevertheless serve "one or more of the purposes of zoning and was consistent with the overall goals of the MLUL." Ibid.

In addition, the applicant must establish the so-called "negative criteria," which requires a showing that the variance "can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70. The party seeking the variance must "demonstrate that the increase in density would not have a more detrimental [e]ffect on the neighborhood than construction of the project in a manner consistent with the zone's restrictions." Grubbs, 389 N.J. Super. at 390.

In this matter, the Board found that plaintiff had satisfied the positive and negative criteria for issuance of a density variance for seven residential lots. At the public hearing,

plaintiff presented testimony from an engineer, who opined that the soils on-site are consistent with the soils of the surrounding developed lots, and that drainage is good and suitable for development. Plaintiff also indicated that he would utilize advanced state-of-the art septic systems, which the Township's engineer had endorsed. The Board determined, however, that a variance should only be granted for seven residential lots.

On appeal, plaintiff argues that the Board essentially acknowledged that he had established the positive and negative criteria for the development of thirteen residential lots and the additional lot for storm water management. We disagree. The Board expressly found that plaintiff had satisfied the positive and negative criteria for a density variance only with regard to an increase in density from five to seven lots. The Board never found that plaintiff satisfied the positive and negative criteria for thirteen residential lots and a lot for drainage.

Plaintiff further argues that the Board improperly denied his application for thirteen residential lots based in part on access issues, which were severed for further review. He also contends there is nothing in the record to support the Board's finding that the property cannot handle the increased density he has proposed. Again, we disagree.

A-2963-16T4

The record shows that plaintiff gains access to his property by means of a twenty-five-foot-wide unimproved dirt and gravel path known as Cerrina Road. In a separate action, plaintiff sought a declaration that the path was a public road. The trial court in that case found that the path was not a dedicated public road, but rather an unimproved access easement. We affirmed the trial court's determination. Holloway v. McManus, No. A-4804-15 (App. Div. Sept. 11, 2017) (slip op. at 2).

Although further review of the access issues was contemplated, that did not preclude the Board from considering access in deciding whether a density variance should issue allowing thirteen residential lots on plaintiff's property. The Board found that the unimproved private access easement would not support the number of trips that would be generated by plaintiff's proposed development.

In its decision, the trial court determined that the record supported the Board's findings that plaintiff had met the positive and negative criteria for a density variance allowing seven residential lots on plaintiff's property. The court wrote that the Board's decision was reasonably based in part upon the fact that the land-locked parcel was accessible only by a private right of way, "which if developed would not meet the full development standards for a publically dedicated roadway." The court found

that the Board had properly exercised its discretion in granting plaintiff's application in part. There is sufficient evidence in the record to support the court's findings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION