**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2561-22

LOUIS E. TOWNS and DORIS
P. TOWNS,

    Plaintiffs-Appellants,

v.

PIKE RUN MEADOWS, LLC, a/k/a
PIKE RUN MEADOWS
APARTMENTS and MIDDLESEX
MANAGEMENT, a/k/a MIDDLESEX
MANAGEMENT, INC.,

    Defendants-Respondents.

_____

Submitted April 30, 2024 – Decided May 14, 2024

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7016-19.

Stark and Stark, PC, attorneys for appellants (Christopher Paul Weidman, of counsel and on the briefs).

Pillinger Miller Tarallo, LLP, attorneys for respondents (John J. Tambascia, Jr., of counsel and on the brief).

PER CURIAM

Plaintiffs Louis E. Towns and Doris P. Towns appeal from a March 17, 2023 order denying a motion to reinstate their complaint. We affirm.

We glean the facts and procedural history from the motion record. Plaintiffs filed a complaint against defendants claiming defendants' negligence caused Louis[1] to suffer injuries. Doris filed a claim for loss of consortium as a result of Louis's injuries. With a trial date scheduled, and the matter "for all intents and purposes" trial ready, counsels for the parties executed a stipulation of dismissal without prejudice to proceed to private mediation. In pertinent part, the stipulation provided:

> pursuant to [Rule] 4:37-1(a), the undersigned counsel hereby: 1) stipulate that [p]laintiffs['] [c]omplaint and all claims against [d]efendants, be dismissed in their entirety without prejudice, each party to bear its own costs; 2) it is further agreed that the parties shall proceed to [m]ediation . . . 3) the parties further agree to waive the statute of limitations regarding plaintiff[]s['] [cause of action] in this matter and agree that in the event the parties do not settle the matter at mediation plaintiff[s] shall have [sixty] days from the date of the mediation to re-file [their] complaint in this present action and that counsel for defendant[s] shall

---

[1] Since Louis and Doris share the same surname, we refer to them by their first names. No disrespect is intended.

> accept service on behalf of the defendants; and 5)[2] it is further agreed if plaintiff[s] fail[] to file a new action within [sixty] days of mediation the matter shall be considered dismissed with prejudice[.]

The parties attended a one-day mediation session on November 4, 2022. The matter did not settle during the session. As the mediator and defense counsel left the session, the mediator shared his "thoughts of the case" and what plaintiffs "would be willing to take" to settle the matter. Defense counsel indicated a willingness to "talk with the carrier." The mediator informed plaintiffs' counsel that he expected to hear from defense counsel and offered the parties to "continue to use [him] to help mediate" or they "could come back for a second mediation."

Two days later, the mediator emailed both counsel and offered that they could contact him, even ex parte, if they thought he could help settle the matter. The mediator never heard from either counsel.

On February 10, 2023, plaintiffs filed a motion to reinstate the complaint under Rule 1:3-7. Defendants opposed the motion, arguing plaintiffs' filing was prohibited because it exceeded the sixty-day time limit provided in the parties' stipulation.

---

[2] The stipulation does not include a fourth provision.

A-2561-22

The judge allowed for extensive briefing and oral argument. Further, the judge permitted additional submittals, after the first oral argument, and requested counsel return for additional oral argument at a second hearing. During oral argument, plaintiffs' counsel explained the delay in filing to reinstate the complaint was due to his "los[ing] track of time" and not recalling the sixty-day deadline in the stipulation.

The judge found the stipulation was binding on both parties. Moreover, the judge determined there was "no question" the stipulation provided "that within [sixty days] of mediation, . . . if the plaintiff fail[ed] to file a new action the matter [would] be dismissed with prejudice." In addition, the judge found the attorneys' and mediator's certifications were "clear" the matter did not resolve on the day of mediation.

Nonetheless, the judge acknowledged that after the mediation session, defense counsel was willing to take an offer to the carrier to settle the case. Moreover, the mediator "left the door open for somebody to contact him to further negotiations." In addition, the judge recognized arbitrations, mediations, and settlement conferences could conclude, but that did not "mean the negotiations [we]re over." However, the judge found that "absolutely nothing happened" after the mediation session.

4

Therefore, applying a commonsense approach, the judge allowed a reasonable "grace period" before starting the clock regarding the stipulation's sixty-day timeframe.[3] However, he concluded plaintiffs waiting a total of ninety-eight days—thirty-eight days after the expiration of the sixty-day time limit—before moving to reinstate their complaint exceeded any reasonable grace period. Therefore, the judge denied plaintiffs' motion to reinstate.

Plaintiffs contend the judge erred by failing to: (1) construe the stipulation in context as plaintiffs "[a]t no point . . . contemplated [they] would voluntarily give up their claims, with prejudice, if the case did not resolve at mediation"; (2) "consider the [s]tipulation's purpose and surrounding circumstances as evidence of [the] parties' intent that the [sixty]-day allotment would not begin to toll until it [wa]s clear settlement discussion through the mediator would be futile," and instead "arbitrarily determin[ing] there should be at most a [fourteen]-day grace period"; and (3) find "plaintiff[]s['] counsel['s] confirm[ation] with the court that by January it was becoming clear that having not heard from defense counsel or the mediator, the mediation had come to an

---

[3] The judge suggested a fourteen-day grace period would be reasonable.

end point, and from there the [sixty]-day period would begin to run" resulting in the timely filing of the motion in February.[4]

We begin our discussion with a review of the principles governing our analysis. "The factual findings of a trial court are reviewed with substantial deference on appeal, and are not overturned if they are supported by 'adequate, substantial[,] and credible evidence.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (quoting Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 293 (2001)). "However, a 'trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Ibid. (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The parties' stipulation is treated as a contract. See Serico v. Rothberg, 234 N.J. 168, 178 (2018). "The interpretation of a contract is subject to de novo review by an appellate court." Kieffer v. Best Buy, 205 N.J. 213, 222 (2011).

---

[4] For the first time on appeal, plaintiffs argue the equitable maxim of "unclean hands." We "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). Since neither of these exceptions apply, we decline to consider this argument.

A-2561-22

"Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Id. at 223.

"A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner." Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009) (citing DiProspero v. Penn, 183 N.J. 477, 496-97 (2005)). "[T]he terms of the contract must be given their 'plain and ordinary meaning.'" Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)). "Where the terms of an agreement are clear, we ordinarily will not make a better contract for parties than they have voluntarily made for themselves, nor alter their contract for the benefit or detriment of either . . . ." Carroll v. United Airlines, Inc., 325 N.J. Super. 353, 358-59 (App. Div. 1999). In other words, "[i]f the contract into which the parties have entered is clear, then it must be enforced as written." Serico, 234 N.J. at 178 (quoting In re Cty. of Atlantic, 230 N.J. 237, 254-55 (2017)).

Applying these well-established principles, we conclude there is no merit in plaintiffs' arguments. First, plaintiffs' argument they did not contemplate a dismissal with prejudice is belied by the clear language of the stipulation,

providing for a dismissal with prejudice if plaintiffs failed to reinstate the complaint within sixty days of mediation.

Second, plaintiffs' contention that they confirmed with the court in January "the mediation had come to an end point," and so their February filing was timely, is not supported in the record. To the contrary, the judge found "absolutely nothing happened" following the mediation session.

Lastly, the judge's determination that mediation must have an endpoint, including a reasonable grace period, was not arbitrary. "When a contract is silent as to the time within which a promise is to be performed, the law will require it to be performed within a 'reasonable time.'" Model Jury Charge (Civil), 4.20 "Time of Performance Where Contract is Silent" (approved June 1971).

Although the parties' stipulation did not define when mediation would end, "under general contract law, terms may be implied in a contract . . . because they are necessarily involved in the contractual relationship so that the parties must have intended them and have only failed to specifically express them . . . because the term was too obvious to need expression." Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965).

Here, the judge applied an informed and considered approach to conclude the stipulation clock began to run approximately fourteen days after the mediator's email. The fourteen-day grace period was reasonable considering the parties undertook no further action following the mediation session.

To the extent we have not addressed any of plaintiffs' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2561-22